## CITY OF EL DORADO *v.* SCRUGGS.

Opinion delivered June 1, 1914.

1. CONSTITUTIONAL LAW—TAKING PRIVATE PROPERTY—COMPENSATION.— Under the Constitution, private property may not be taken, appropriated or damaged without just compensation to the owner. (Page 224.)

2. RIPARIAN RIGHTS—POLLUTION OF STREAM—DAMAGES.—The pollution of a stream flowing through plaintiff's land constitutes a damage thereto within the meaning of the constitutional guaranty, which may not be done without compensation. (Page 245.)

3. SEWER DISTRICT—DAMAGE TO LAND—DISCHARGE OF SEWAGE—CONSTRUCTION OF SEWER.—A sewer district constructed a septic tank from

which the sewage was discharged into a stream flowing through plaintiff's land, causing plaintiff damage. *Held*, although after completion the sewer passed under the control of the city, nevertheless the sewer district and not the city would be liable for the damage to plaintiff's property.   (Page 245.)

4.  SEWER DISTRICTS—DAMAGE TO LAND BY SEWAGE—MEASURE OF DAMAGES.—Where plaintiff's land was damaged by the discharge of sewage into a stream flowing through his land, the measure of damages would be the difference in value of the land before and after the stream was used as an outlet to the sewer.   (Page 245.)

5.  DAMAGES—MARKET VALUE OF LAND.—In determining the market value of land damaged by defendant, the owner may show every advantage that his property possesses, present and prospective, in order that the jury may determine what price it could be sold for upon the market.   (Page 245.)

6.  MUNICIPAL CORPORATIONS—WRONGFULLY FLUSHING SEPTIC TANK—DAMAGES—LIABILITY—SEWER DISTRICT.—Neither the sewer district nor the city is liable to a land owner whose land is damaged by reason of the acts of the city employees in wrongfully flushing the septic tank, and polluting a stream flowing through plaintiff's land.   (Page 246.)

7.  MUNICIPAL CORPORATION—TORTS OF OFFICERS.—A city is not liable for the torts or wrongful acts of its officers.   (Page 246.)

8.  DAMAGE TO LAND—POLLUTION OF STREAM.—The owner of land can not recover damages because of the ruination of his dairy business by reason of the pollution of a stream running through his land, with sewage, but such facts may be considered as elements in the damage to plaintiff's land.   (Page 247.)

9.  DAMAGE TO LAND—POLLUTION OF STREAM.—In an action for damages growing out of the pollution of a stream with sewage, flowing through plaintiff's land, the jury may only consider the injury that resulted to plaintiff's land, and the plaintiff may show any use to which the property was adapted, and its depreciation in value by reason of the fact that the stream which ran through his land had been used as a permanent outlet for the sewer.   (Page 247.)

Appeal from Union Circuit Court; *George W. Hays,* Judge; reversed.

### STATEMENT BY THE COURT.

L. J. Scruggs instituted this action in the circuit court against the city of El Dorado and Sewer Improvement District No. 1 of the city of El Dorado to recover

damages for using a stream running through his land as an outlet to a sewer. The facts are as follows:

Sewer Improvement District No. 1 was organized in the city of El Dorado for the purpose of constructing a sewer. In the construction of the sewer a septic tank was erected. The tank is made of concrete and is covered over and practically air tight. The septic tank is located on lands purchased and owned by the defendants, and is situated more than 100 feet from the nearest point of plaintiff's land. It is 591 feet from his house. There is a stream of water which runs through the plaintiff's land; and the drainage from about one-fourth of the city of El Dorado is discharged into this stream. After the sewage is chemically treated in the septic tank, this stream, after leaving the septic tank, to the place where feet from the place where the sewage is deposited in the stream, aftr leaving the septic tank, to the place where the stream enters plaintiff's land. It is 562 feet from where the sewage enters the stream to plaintiff's residence, on a straight line. The sewage, when it enters the septic tank, is chemically treated, and passes through a process of purification, and then comes out of the septic tank as a stream of water which seems to be perfectly clear and is, according to the testimony of the defendants' witnesses, practically pure and odorless. According to the testimony of the plaintiff's witnesses, offensive odors arise from the septic tank, and the water which comes therefrom is not pure. The additional flow of water causes the stream through plaintiff's land to overflow, and sediment is deposited on the grass next to the bank of the stream. The plaintiff owned and operated a dairy, and the deposit of the sewage into the stream rendered the water unfit for his cattle to drink, and the sediment that was deposited on the bank when the stream overflowed rendered the grass unfit for the use of the cattle until it had been purified by rain falling and washing it off. The odor from the septic tank was also offensive to the plaintiff and his family at their residence.

Other facts will be referred to in the opinion. The jury returned a verdict for the plaintiff, and the defendants have appealed.

*Geo. M. LeCroy* and *Neill C. Marsh,* for appellants.

1. The pollution of a stream, rendering it unfit for use, is held, in many cases, to be a virtual taking without compensation of water rights or riparian privileges. 50 L. R. A. 564; 72 Conn. 531; 145 Ill. 23; 45 N. Y. 365; but the outflow of sewage was shown to have rendered the stream unfit for use for any purpose. In none of these cases was the sewage treated or purified. Another line of cases is in conflict with these. Damages to riparian owners by the discharge of city sewage into a stream in a skilful manner and in conformity to the statute, are merely consequential and not recoverable. 135 Ind. 547; 26 Ark. 277; 18 Ind. 482; 110 Mass. 216; 112 Ind. 542; 79 *Id.* 491; 41 Am. Rep. 618.

2. The city is not liable. 110 Mass. 216; 28 Cyc. 1333, note 6; 14 Am. Rep. 592; 49 Ark. 139; 93 *Id.* 250; 98 *Id.* 206.

3. The court erred in its charge as to the measure of damages. Hale on Damages, 361; 91 Ark. 58; 6 L. R. A. 254; 14 *Id.* 329; 116 Pa. 818.

4. The district is merely the agent of the property owners, and not the agent of the city. It exercises the governmental functions delegated to it by law. 55 Ark. 148; Kirby's Digest, § § 5664, 5672, 5719. Improvement districts are *quasi*-corporations and not liable for the negligence of officers or agents. 94 Ark. 380; 171 Mass. 427; 9 Wheaton, 720.

5. Improvement districts have no control over and no power to operate sewers after completion, and when completed their liability ceases. 56 Ark. 206; 53 *Id.* 300; 97 *Id.* 318; 161 S. W. Rep. 1057.

*Patterson & Green,* for appellee.

1. Appellants have created a nuisance, thus taking plaintiff's property for public use without compensation. 48 L. R. A. 698-9, note 3. Our Constitution prohibits the

*damaging* as well as taking without compensation, and *damaging* is a taking of property. 50 L. R. A. 504; 72 Conn. 531; 48 L. R. A. 691; 18 Okla. 32; 11 A. & E. Ann. Cas. 581; 155 S. W. 910; 47 L. R. A. (N. S.) 137; Lewis on Em. Dom., § 61; 28 Cyc. 1293; 29 *Id.* 1205.

2. Improvement districts are liable. Kirby's Dig., § § 2921, 2925, 5729; 56 Ark. 191; 94 *Id.* 380; 161 S. W. 1057; 54 Ark. 140; 5 Miss. 197.

2. The charge as to measure of damages was the law. The damages were permanent. *McLaughlin* v. *City of Hope,* 107 Ark. 442; 47 L. R. A. (N. S.) 137; 154 S. W. 186; 77 N. E. 407; 131 S. W. 1016; 92 *Id.* 930; 63 *Id.* 981; 92 *Id.* 957.

3. A lower riparian owner has the right to have the water come to him unpolluted. 123 S. W. 251; 107 Ark. 442. An attempt to sterilize the sewage does not relieve from damages. 35 Atl. 499; 29 Cyc. 1155; 91 Ark. 61; 85 *Id.* 544; 122 N. Y. 18.

4. It is not necessary to show negligence to establish a case of damage in cases like this. 91 Ark. 61; 107 *Id.* 442; 28 Cyc. 1293.

5. The city is liable. 73 Ark. 448; Dillon, Mun. Corp., § 1024.

HART, J., (after stating the facts). The concrete case we have to deal with is that a sewer improvement district was formed in the city of El Dorado, and when it was constructed the sewage was carried into a septic tank, where it was chemically treated, and from there was discharged in the form of water into a natural watercourse which ran through the plaintiff's land. The water was discharged into the stream which ran through plaintiff's land at a point about 500 feet distant from it. The plaintiff conducted a dairy on his land, and, according to the testimony adduced by him, the water course was polluted by the sewage being discharged into it so that it was rendered unfit for his cattle to drink. It was also shown by him that noxious and offensive odors emanated from the septic tank which were injurious to the health of himself and family. It was also shown that the dis-

charge of the sewage into the stream caused it to overflow, whereby a sediment was deposited on the grass which grew near the banks of the stream on plaintiff's land, thereby rendering it unfit for grazing purposes until the sediment had been washed off by rains.

Our Constitution provides that private property shall not be taken, appropriated or damaged without just compensation to the owner. In the case of the *Hot Springs Railroad Company* v. *Williamson,* 45 Ark. 429, the difference between a Constitution which contains this provision and one which contains a provision that private property shall not be taken for public use without just compensation was pointed out. The court said that it may be now taken as well settled that in a Constitution which provides that private property shall not be damaged for public use without compensation, it is no longer necessary that there should be a physical invasion or spoliation of one's lands in order to give a right of recovery.

In the application of this principle, in the case of *McLaughlin* v. *The City of Hope,* 107 Ark. 442, 47 L. R. A. (N. S.) 137, the court held that the turning of sewage by a municipal corporation into a stream, to the injury of a lower riparian owner of property, is within our constitutional provision requiring compensation for damaging property for public use. The court further held that the damages to be awarded for the draining of sewage into a stream by the permanent plant of a municipal corporation should be assessed on the theory of a permanent taking under the right of eminent domain. The reason given is that the riparian proprietor is entitled to have the water of the stream flow through his land unpolluted and uncontaminated by the discharge of the sewage; and such right is held to be a real and tangible property right and as much entitled to the protection of the constitutional provision as the right of the riparian owner to have the soil remain in its place. The right to have the stream flow through his land unpolluted is a part of the freehold of which the owner can not be de-

prived, except by due process of law. Therefore, the
pollution of the stream constitutes a damage to his prop-
erty within the meaning of the constitutional guaranty,
which may not be done without compensation.

In the present case the sewer improvement district
constructed the sewer and discharged the sewage into the
stream which flowed through the plaintiff's land; and this
was a damage to his property by reason of the construc-
tion of the sewer, and the sewer district, and not the city
is liable in damages to the plaintiff therefor. It is true
that when the sewer was completed it became subject to
the control of the city of El Dorado, and the board of
the sewer district no longer had control over it. *Pine
Bluff Water Co.* v. *Sewer District,* 56 Ark. 205. It will
be noted, however, that it was a part of the plan for the
construction of the sewer that the sewage from the septic
tank should be discharged into the stream which ran
through the plaintiff's land. For this reason, whatever
damage the plaintiff may have suffered was an incident
to the construction of the sewer. Therefore, the city was
not liable to him for the damages, but the sewer district
alone was liable. The measure of damages to the plain-
tiff would be the difference in value of his land before
and after the stream was used as an outlet to the sewer.
*Texas & St. Louis Ry. Co.* v. *Kirby,* 44 Ark. 103. In de-
termining the market value of the plaintiff's property,
the rule, as established in this State, is that the owner
may be allowed to show every advantage that his prop-
erty possesses, present and prospective, in order that the
jury may satisfactorily determine what price it could be
sold for upon the market. *Kansas City So. Ry. Co.* v.
*Boles,* 88 Ark. 533. See also *Kansas City So. Ry. Co.* v.
*Anderson,* 88 Ark. 129. In the application of these prin-
ciples to the present case it may be said in estimating the
damages that accrued to the plaintiff he may show the
value of his land for any purpose to which it was adapted
at the time the damage was done to it, and in considering
its value after the stream which ran through it had been
polluted by the discharge of the sewage into it, the jury

might consider the fact that the stream had been polluted by the sewage, that an additional quantity of water had been discharged into the stream, which caused it to overflow and deposit a noxious or offensive sediment on the grass so as to render it unfit for grazing purposes, if the proof shows such to be the case, and also the further fact that noxious and offensive odors are emitted from the septic tank which are injurious to the health or comfort of the plaintiff and his family.

The proof on the part of the plaintiff tended to show that after the sewer was constructed and put in operation it was flushed frequently, and that the result of this flushing was to increase the pollution of the stream and also the offensive and obnoxious odors which were emitted from the septic tank. The evidence discloses, however, that it was not necessary to flush the septic tank oftener than once a year, or perhaps not that often. Therefore, the damages suffered by the plaintiff by the wrongful flushing of the tank could not be recovered either against the sewer district or against the city. Such damage was not incident to the construction of the sewer, but resulted from the wrongful acts of those who operated the sewer. The sewer district could not be held liable for the negligence of its servants in constructing or operating the sewer. *Wood et al.* v. *Drainage Dist. No. 2 of Conway County,* 110 Ark. 416, 161 S. W. 1057. This court is also committed to the doctrine that a city is not liable for the torts or wrongful acts of its officers. *Trammell* v. *Russellville,* 34 Ark. 105; *Collier* v. *Fort Smith,* 73 Ark. 447; *Franks* v. *Holly Grove,* 93 Ark. 250; *Gregg* v. *Hatcher,* 94 Ark. 54. Therefore, the court erred in allowing a recovery on account of the wrongful acts of the officers of the sewer district or of the city in flushing the septic tank when it was not necessary to do so.

Of course, in estimating the damages that accrued to the plaintiff the jury might take into consideration all damages that were suffered by the plaintiff on account of the necessary flushing of the septic tank, for that would

be a damage that would be incident to the construction and proper operation of the sewer.

The evidence of the plaintiff also shows that he operated a dairy on his farm at the time the stream was taken as an outlet for the sewer. His dairy business was not a part of the realty, and if the sewer district had instituted condemnation proceedings against the plaintiff it could not have condemned either the cows used by the plaintiff or his dairy business.

The evidence of the plaintiff also tended to show that he was unable to sell his milk because his customers believed that it was impure by reason of his cows drinking from the polluted stream. He was allowed to recover damages on this account. This was error. The injury to his dairy business was not an element to be considered in estimating the damage to his land. If his land was more profitable to be used in running a dairy than for any other use, its adaptability for that use might be considered by the jury in estimating the damages to his land by reason of the pollution of the stream, but the court could not allow as an element of damages to his land the loss he suffered in the business of operating a dairy. The jury could only consider the injury that resulted to his land, and, as above stated, in determining that fact, the plaintiff should be allowed to show any use to which his property was best adapted, and its depreciation in value by reason of the fact that the stream which ran through his land had been used as a permanent outlet for the sewer.

We have not taken up and discussed the assignments of error in detail, or in the order in which they are presented in the briefs, but we think the principles of law which we have announced are a sufficient guide for a retrial of the case.

For the errors indicated the judgment must be reversed and the cause remanded for a new trial.