Jones *v.* Sewer Improvement District No. 3 of Rogers.

Opinion delivered June 7, 1915.

1. Municipal corporations—local improvement districts—officers—liability.—In the absence of a statute making them liable, an action will not lie against a municipal corporation or local improvement district, or the officers thereof, the same being agencies of the State for governmental purposes.

2. Sewer improvemet districts—taking of private property—compensation.—Sewer improvement districts may be formed in cities, and outlets therefor secured outside the corporate limits of the city, and as the Constitution forbids the taking of private property for public use without just compensation, the grant of the Legislature to cities and towns to form sewer improvement districts, and to obtain an outlet therefor, outside the corporate limits of such municipality, imposes upon such corporation the correlative duty to make just compensation for property so taken.

3. Municipal corporations — polluting stream — sewage — liability—compensation.—The turning of sewage by a municipal corporation into a stream to the injury of lower riparian owners, is within the constitutional provision requiring compensation for damaging property for public use, and the damages should be assessed on the theory of a permanent taking under the right of eminent domain.

4. Sewage—pollution of stream—measure of damages.—The measure of damages to a riparian owner from the use of a stream as an outlet for sewage, by a municipal corporation, is the difference in the value of the land before and after the stream was so used.

5. Sewers—nuisance—duty of municipal corporation.—It is the duty of a municipal corporation, to so maintain its sewer system, and the outlets thereof, so that they shall not be a nuisance to property owners.

6. Sewers—treatment of sewage chemically—duty of commissioners.—Where it appeared to have been practicable, and could be done at a reasonable cost, *held*, it was the duty of certain sewer commissioners, to so treat the sewage in the septic tank, as to destroy the odors thereof, and render the same otherwise unobjectionable, and that it was the duty of the municipal corporation to maintain the sewer system in that manner.

7. Sewers—nuisance—evidence.—Evidence held to show that a septic tank, as maintained by a city, constituted a nuisance by reason of odors arising therefrom, and the nature of the material discharged into a stream, and that the statutes authorizing the construction and maintenance of sewer systems, did not contemplate or authorize the maintenance of nuisances.

8. SEWERS—NUISANCES—LIMITATIONS.—The fact that sewers are of permanent construction, does not render the nuisance, if any, permanent, also, and when a sewer system was so constructed and maintained as to constitute a nuisance, the nuisance is of a continuing or recurring nature, and an action by plaintiffs on account of the nuisance is not barred by the three-year statute of limitations.

9. NUISANCE—MAINTENANCE OF SEWER—EQUITABLE RELIEF—EQUITY JURISDICTION.—Where the construction and maintenance of a sewer constitutes a nuisance, the municipal corporation, sewer district, or their officers, may be enjoined from creating a nuisance, or to abate one already created by them.

10. SEWER DISTRICTS—COMMISSIONERS—AUTHORITY—CONTROL BY CITY.— The object of the organization of a sewer district and the authority of its board of commissioners is limited to the construction of the sewer and paying for same; and when the improvement is completed it becomes subject to the control of the city.

Appeal from Benton Chancery Court; *T. H. Humphrey,* Chancellor; reversed.

*Rice & Dickson,* for appellant.

1. A flagrant and dangerous nuisance was proven. 102 Ark. 288; 85 *Id.* 553-4; 5 Pom. Eq., § 539; 93 Ark. 53; 77 Am. St. Rep. 335; 92 S. W. 931-2; 41 Am. St. 367; 50 *Id.* 168; Spelling on Injunction (2 ed.), § 676; 15 Cyc. 728; 54 Ark. 144; Kirby's Dig., § 3965; 63 Pac. 557; 60 S. W. 593; 51 Pac. 557; 47 S. W. 70. The injunction should have been made permanent, after a reasonable time to repair. Cases, *supra.* The individual members of the board were liable. 103 Ark. 270. The nuisance was continuing and grew more aggravated. It is immaterial how appellees acquired their property or right-of-way, whether under the law of eminent domain or by purchase. Where one uses his property so unreasonably as to annoy, injure or endanger the comfort, health or safety of another, * * * he creates a nuisance. It is no defense that the business is conducted in a careful manner. 102 Ark. 288. The acquiring of the right-of-way by condemnation does not give the right to maintain a nuisance. 93 Ark. 53; 77 Am. St. 53; 92 S. W. 931.

Oral consent is not sufficient to warrant the establishment of the plant, or the discharge of water on a party's

land, and it may be recalled.    41 Am. St. 367; 42 *Id.* 840. A company is liable to damages and to be enjoined from further contamination of a stream already contaminated. 50 Am. St. 168.    A public agent is liable, and injunction will be against it, if irreparable injury is done.    Spelling on Inj. (2 ed.), § 876.

The petition and ordinance does not authorize appellees to empty their refuse on appellant's premises. 103 Ark. 270.

The appellees, *pro se.*

1.    Appellees were not trespassers.    Kirby's Digest, § § 5674, 2921; 103 Ark. 270.

2.    The board could lawfully go outside the city limits to procure an outlet for the sewer and enter on appellants' lands and appropriate same as an outlet, but appellants were entitled to just compensation for damages in a suit at law.    They have already exercised that right. Kirby's Dig., § § 2921, 5674; 107 Ark. 442; *El Dorado* v. *Scruggs,* 113 Ark. 239.

3.    The allegations of nuisances were not proved.

HART, J.    R. C. Jones and Martin Wheatley instituted separate actions in the chancery court against the city of Rogers, Sewer Improvement District No. 3 of the city of Rogers, and the individuals comprising the board of commissioners of said improvement district.    The causes were consolidated for the purpose of trial.

Among other allegations contained in the complaint are the following:

That the plaintiffs are farmers and reside on their farms near the city of Rogers, in Benton County, Arkansas.

That a natural drain or water course runs through their land in which water flows the year round.

That a sewer improvement district was organized in the city of Rogers and sewers constructed under it.

That plaintiffs' farms were situated within a mile of the city limits, and that they resided thereon.

And that a septic tank was constructed near their farms and that the effluent from it flowed through the natural drain or water course on their land.

The allegations of the complaint state that the septic tank was maintained in such a manner as to constitute a nuisance and the prayer of the plaintiffs is that the nuisance be abated and the defendants restrained from maintaining a septic tank in such a way as to constitute a nuisance.

The cause of action against the city of Rogers was dismissed by plaintiffs and upon a hearing of the cause the chancellor dismissed the complaint for want of equity. The plaintiffs have appealed.

(1)  In the absence of a statute making them liable we have held that an action for tort will not lie against a municipal corporation or local improvement district or the officers thereof because such corporation and their officers are merely agents of the State for governmental purposes.  For cases in point with reference to municipal corporations and their officers, see the following: *Browne* v. *Bentonville,* 94 Ark. 80; *Franks* v. *Holly Grove,* 93 Ark. 250; *Gregg* v. *Hatcher,* 94 Ark. 54; *Gray* v. *Batesville,* 74 Ark. 519; *Fort Smith* v. *Dodson,* 51 Ark. 447; *Fort Smith* v. *York,* 52 Ark. 84; *Arkadelphia* v. *Windham,* 49 Ark. 139; *Trammel* v. *Russellville,* 34 Ark. 105.

For cases in point as to improvement districts and their officers, see:  *Board of Improvement of Sewer District No. 2* v. *Moreland,* 94 Ark. 380; *Wood* v. *Drainage District No. 2 of Conway County,* 110 Ark. 416.

Article 2, section 22, of our Constitution provides that private property shall not be taken, appropriated or damaged for public use without just compensation.

(2)  Under our statute, sewer improvement districts may be formed in cities and outlets therefor secured outside the corporate limits of the city.  See *Kraft* v. *Smothers,* 103 Ark. 270.

As the Constitution forbids the taking of private property for public use without just compensation, the grant of the Legislature to cities and towns to form sewer improvement districts and to obtain an outlet therefor

outside the corporate limits of such municipality imposes upon such corporations the correlative duty to make just compensation for property so taken.

(3)   In the exercise of this power we have held that the turning of sewage by a municipal corporation into a stream to the injury of lower riparian owners is within the constitutional provision requiring compensation for damaging property for public use, and that in such cases the damages should be assessed on the theory of a permanent taking under the right of eminent domain. *Mc-Laughlin* v. *City of Hope,* 107 Ark. 442.

The same principle was recognized in the *City of El Dorado et al.* v. *Scruggs,* 113 Ark. 239, 168 S. W. 846, where the sewer improvement district commissioners constructed a sewer and appropriated the property of a land owner outside of the limits of the corporation for the purpose of discharging the effluent from the septic tank of the sewer district.

In the case at bar the plaintiffs instituted actions in the circuit court for the taking and damaging of their property by the sewer improvement district and recovered judgments therefor.   As we have already seen, the flow from the septic tank emptied into a natural drain or water course which flowed through plaintiffs' land and which contained water throughout the year.

(4)   The measure of damages to a riparian owner from the use of a stream as an outlet for sewage is the difference in value of the land before and after the stream was so used.   This rule was laid down in the case of *McLaughlin* v. *City of Hope, supra*, and *City of El Dorado* v. *Scruggs, supra.*

(5)   In the circuit court the plaintiffs were allowed to recover damages according to this rule, that is to say, they were entitled to and allowed to recover damages for the land taken and damaged by the construction of the sewer.   The damages allowed in such cases are those which result from a proper construction of a sewer.   According to the allegations of the complaint, after the sewer was constructed it was maintained in such a way as to constitute a nuisance.   The right to construct sew-

ers and drains implies no right to create a nuisance, public or private. It is the duty of the commissioners of the sewer district to construct the sewer so that it will not become a nuisance to any neighborhood or to any particular inhabitant thereof; and it is the duty of the city after the sewer has been turned over to it to avoid the same result by properly maintaining and repairing the sewer after it is constructed. In Joyce on Nuisances, paragraph 284, page 373, is said:

"Where municipal, quasi-municipal, and public bodies generally proceed to exercise, or do exercise their powers in constructing and maintaining great public works of a sanitary nature, such as a sewerage system, and the question of the extent of or limitations upon their powers has come before the courts, these powers and the rights of the public and of private individuals in connection therewith have occasioned much discussion. But notwithstanding certain decisions not in harmony herewith, it may be stated that even though a municipality or other body has power to construct and maintain a system of sewers, and although the work is one of great public benefit and necessity, nevertheless such public body is not justified in exercising its powers in such a manner as to create by a disposal of its sewage a private nuisance without making compensation for the injury inflicted or being responsible in damages therefor or liable to equitable restraint in a proper case, nor can these public bodies exercise their powers in such a manner as to create a public nuisance for the grant presumes a lawful exercise of the power conferred and the authority to create a nuisance will not be inferred." See, also, 2 Dillon, Municipal Corporations (4 ed.), ¶ 1047, (5 ed.), § 1740.

(6) The right conferred upon the sewer commissioners to construct the sewer system and to obtain an outlet therefor outside the city limits, carried with it the power to condemn lands necessary for the outlet and for the construction of the septic tank and filter beds. In the suit brought in the circuit court the plaintiffs recovered damages for all injuries to their property as were the nat-

ural and necessary result of the construction of the sewer system. While it was lawful to construct the sewer system and the plaintiffs have received compensation for the injury to their property incident to the construction thereof, it by no means follows, that either the city authorities or the sewer commissioners have the right to act in excess of the powers conferred upon them by law. In short, it was the duty of the sewer commissioners to use due care in the construction of the sewer system, and the same duty devolved upon the city authorities in the operation and maintenance thereof.

The record shows that it was practicable at a reasonable cost as part of the construction of the sewer system to chemically treat the sewage in the septic tank so that the solid matter was reduced to a liquid form, and the noxious and harmful odors would to a great extent be eliminated. It was the duty of the sewer commissioners to adopt such a method in the construction of the sewer system and it was likewise the duty of the city authorities to use such a method in the maintenance of the system.

This brings us to the question of whether the sewer system was operated and maintained in such a manner as to constitute a nuisance.

The record in this case is long. Numerous witnesses were called to testify, and their evidence to a considerable extent is conflicting.

The evidence on the part of the defendants tends to show that the sewer and the septic tank were constructed in a proper manner and that there was no serious pollution of the air and no deposit of fecal matter or other solid substance on the lands of the plaintiffs or on other lands adjacent to the septic tank.

On the other hand, the testimony on the part of the plaintiffs establishes the fact that when septic tanks, filtering beds and other devices for purifying sewage are constructed, operated and maintained in a proper manner, the solid matter which goes into the septic tank is reduced to a liquid form and that the flow from the septic tank is practically odorless and that no noxious odors of any serious consequence emanate from the septic tank;

that the contents of the septic tank are chemically treated in such a way that the liquid which flows therefrom contains but little impure matter.

Several witnesses, including physicians and other experts, testified that they had been on the land adjacent to the septic tank and on the land of the plaintiffs and that fecal matter and other solid substances were allowed to flow from the tank along with impure water and that they were precipitated upon the lands of the plaintiffs. They testified as to the volume of such solid substances as were allowed to flow from the tank and to the intensity of the odors therefrom.

No useful purpose could be served by stating this testimony in detail; it is sufficient to say in a general way that the testimony showed that the odor came from the decaying and putrefying organic matter contained in the septic tank and that these offensive odors were an indication of weak septic action and lack of purification. Some of the water which flowed from the tank was chemically treated and found to contain colon bacilli and to produce 75 per cent gas. The evidence of the experts shows that this could have been avoided by a proper operation and maintenance of the sewer system.

(7) After a careful consideration of the whole record, we are of the opinion that the clear preponderance of the evidence shows that the sewer system was operated and maintained in such a way as to constitute a nuisance. Our statute authorizing cities and towns to form improvement districts for the construction of a system of sewers did not intend to authorize the creation of a nuisance.

(8) The defendants pleaded the statute of limitations. The sewer system was created and put in operation in April, 1910, and the sewage has been continuously discharged on the lands of the plaintiffs for a period of three years thereafter. We do not agree with the contention of the defendants, however, that the action is barred by the statute of limitations. The mere fact that sewers are of permanent construction does not render the nuisance, if any, permanent also. As we have already

seen, the nuisance in the present case arose from faulty operation and maintenance of the sewer. It was, therefore, of a continuing or recurring nature, and the action of plaintiffs was not barred.

(9) The action of the defendants in negligently maintaining the sewer approximately and efficiently contributed to the nuisance. Thus the fundamental basis of all equity jurisdiction in tort manifests itself and the right of the plaintiffs to equitable relief is clear and indisputable. Pomeroy's Equity Jurisprudence, Vol. 5, § 514. See, also, *Durfey* v. *Thalheimer*, 85 Ark. 544; Joyce on Nuisances, § 284, page 373.

As we have already seen, this court has uniformly held that neither municipal corporations nor local improvement districts nor their officers may be sued at law for tort; but it does not follow that in a proper case they may not be enjoined from creating a nuisance or be required to abate one already created by them. Indeed, this affords ground for equitable relief in actions like this.

(10) The object of the organization of a sewer district and the authority of its board of commissioners is limited to the construction of the sewer and paying for same. When completed, they become subject to the control of the city. *Pine Bluff Water Co.* v. *Sewer District*, 56 Ark. 205; *City of El Dorado* v. *Scruggs, supra.*

There is some conflict in the testimony as to whether or not the construction of the sewer has been completed. The record shows that the sewer has been in operation several years and that owing to faulty construction its operation has created a nuisance. This defect the commissioners have tried to remedy, but they have not yet succeeded. It does not definitely appear from the record whether or not the sewer has been turned over to the city authorities. It does show that the plaintiffs dismissed their cause of action against the city authorities. This they should not have done, and, inasmuch as the decree must be reversed for the causes above stated, they will be permitted to amend their complaint, if they are advised so to do, to again make the city a party to the ac-

tion; and the chancellor will be directed to enjoin the city authorities or sewer commissioners, whichever now have control of the operation and maintenance of the sewer system, from operating and maintaining it so as to create or continue a nuisance on the lands of the plaintiffs.

It is so ordered.