SEWER IMPROVEMENT DISTRICT No. 1 OF SHERIDAN *v.* JONES, ADMINISTRATRIX.

4-5714 134 S. W. 2d 551

Opinion delivered December 18, 1939.

*Jim C. Cole,* for appellant.

*McDonald & McDonald,* for appellee.

SMITH, J. A suit brought by Burl Grubbs was revived after his death to recover damages from Sewer Improvement District No. 1 of Sheridan, Arkansas, to a 7½-acre tract of land upon which Grubbs resided at the time of his death under color of title, alleged to have been occasioned by the improper maintenance and operation of a septic tank, which was an essential part of the sewage system, and by the construction of two ditches across the Grubbs land through which polluted water ran from the septic tank.

The first insistence is that there was no sufficient showing of title to support the action. But, as we have just said, Grubbs was in the actual possession of the land at the time of his death, claiming ownership under color of title, and this is a *prima facie* showing of title. Of course, it is only *prima facie,* but there was no showing that Grubbs' *prima facie* title was not actual title. It was held in the case of *Weaver* v. *Rush,* 62 Ark. 51, 34 S. W. 256, that proof by plaintiff that his ancestor died

in possession of land, claiming under color of title, makes a *prima facie* showing of title sufficient to support an action in ejectment. See, also, *Nicklace* v. *Dickerson,* 65 Ark. 422, 46 S. W. 945.

It was alleged and shown that fecal matter flowed from the septic tank into the ditches, and that the effluvium therefrom greatly depreciated the value of the Grubbs land. There was a verdict and judgment in favor of the plaintiff for the sum of $500, from which is this appeal.

It is uncertain upon what theory this verdict was returned. There was testimony to the effect that after rains had fallen the ditches overflowed and the fecal matter was scattered over the land, and that this occurred with such frequency that the land had lost its entire market value, which previously had been about $70 per acre, and had become worthless. The verdict of the jury was for "temporary damages," although there was no testimony showing to what extent, if at all, the rental value of the land had depreciated.

The verdict is defended upon the ground that the cause of action was not an original one arising out of the construction of the septic tank and the digging of the ditches, but was a recurring injury, upon which separate causes of action might be based as each cause of action arose.

It is undisputed that the septic tank was erected and the ditches dug more than three years before the institution of the suit; but it is also undisputed that the tank was not properly maintained, and that by clearing it out and by other small expenditures it might be made to function as intended, and, if so, there would be no damage resulting from its operation. One defect in the tank that has developed is that it is now uncovered, and as long as it remains so, and until the tank has been cleaned out and restored to its original and intended condition, there will continue to be a flowage of polluted water.

But this recovery of damages is one which we think may not now be sustained, because of the law applicable

to sewer districts as announced in a number of cases and especially *Jones* v. *Sewer Imp. Dist. No. 3 of Rogers,* 119 Ark. 166, 177 S. W. 888, and *Wood* v. *Drainage Dist. No. 2 of Conway County,* 110 Ark. 416, 161 S. W. 1057.

In the Jones case, *supra,* it is said that, in the absence of a statute making them liable, an action for *tort* will not lie against a municipal corporation or local improvement district, or the officers thereof, because such corporations and their officers are merely agents of the state for governmental purposes; but as the Constitution forbids the taking of private property for public use without just compensation, the grant of the power by the legislature to cities and towns to form sewer improvement districts and to obtain an outlet therefor outside the corporate limits of such municipality imposes upon such corporations the correlative duty to make just compensation for property so taken.

In this Jones case, *supra,* it was further said that ''In the exercise of this power we have held that the turning of sewage by a municipal corporation into a stream to the injury of lower riparian owners is within the constitutional provision requiring compensation for damaging property for public use, and that in such cases the damages should be assessed on the theory of a permanent taking under the right of eminent domain. *McLaughlin* v. *City of Hope,* 107 Ark. 442, 155 S. W. 910, 47 L. R. A., N. S., 137.''

And it was there further said that the measure of damages to a riparian owner from the use of a stream as an outlet for sewage is the difference in value of the land before and after the stream was so used.

Now, a sewer improvement district may acquire an outlet for the sewage, and it may do so although the outlet extends beyond the corporate limits of the municipality within which the sewer improvement district was organized. The statute expressly confers that authority. Section 9977, Pope's Digest. But the express holding in the Jones case, *supra,* based upon the authority of *Mc-*

*Lauglin* v. *City of Hope, supra,* which it cites, is that compensation for this outlet and the damages incident thereto should be assessed on the theory of a permanent taking under the right of eminent domain.

In the McLaughlin case, *supra,* it was held that the turning of sewage into a branch by a city and polluting the water thereof, to the damage of riparian owners below, is a damage done to such property for public use within the meaning of art. 2, § 22, of the Constitution of 1874 for which the city must make compensation. The theory upon which damages were held recoverable was that, as the pollution of the stream was an incident to the exercise of the right of eminent domain, improvement districts and municipalities exercising that right were liable for damages incident to its exercise. There was, however, in that case no intimation that the damages there sued for, which were assessable on the theory of a permanent taking under the right of eminent domain, had not been brought within three years after the exercise of this right of eminent domain, which is the applicable statute of limitations in actions of that character.

In the case of *Wood* v. *Drainage Dist. No. 3, supra,* the facts were that an improvement district, in digging drainage ditches for which purpose it was organized, so delayed digging and so negligently constructed a ditch that water was impounded which overflowed and damaged adjacent land. Suit was brought to recover this damage, and in holding that the damages were not recoverable it was there said: "So here it may be said that the drainage district has only such power, and has only such liabilities, as are prescribed by the statute creating it. The district has no property, out of which a judgment for tort could be satisfied. It is true, it has the power to levy assessments, but this can be done only for the purposes provided in the act (under which the drainage district was organized), and the statute does not give it any power to levy assessments for the satisfaction of judgments for tort against it. Therefore, we

hold that the district was not liable, under the allegations of the complaint.''

Here, in the exercise of the right of eminent domain, the sewer district caused ditches to be dug across the Grubbs land, into which polluted water flows from the septic tank, and the owner of that property had the right to be compensated for any damages resulting therefrom, and if, through the effluvium and the water from it, the value of the land had diminished, this is a taking of the land to the extent of the diminution of value. But suit for these damages must be brought within three years of the date of the exercise of this right of eminent domain.

In this Jones case, *supra,* it was said: ''The object of the organization of a sewer district and the authority of its board of commissioners is limited to the construction of the sewer and paying for same. When completed, they become subject to the control of the city. *Pine Bluff Water Co.* v. *Sewer District,* 56 Ark. 205, 19 S. W. 576; *City of El. Dorado* v. *Scruggs,* 113 Ark. 239, 168 S. W. 846.''

It does not appear whether the town of Sheridan has control of this sewer project. But neither the city nor the sewer improvement district has the right to create or maintain a nuisance. In this Jones case, *supra,* after stating the measure of damages to the riparian owner from the use of a sewer as an outlet for sewage, it was said: ''In the circuit court the plaintiffs were allowed to recover damages according to this rule, that is to say, they were entitled to and allowed to recover damages for the land taken and damaged by the construction of the sewer. The damages allowed in such cases are those which result from a proper construction of a sewer. According to the allegations of the complaint, after the sewer was constructed it was maintained in such a way as to constitute a nuisance. The right to construct sewers and drains implies no right to create a nuisance, public or private. It is the duty of the commissioners of the sewer district to construct

the sewer so that it will not become a nuisance to any neighborhood or to any particular inhabitant thereof; and it is the duty of the city after the sewer has been turned over to it to avoid the same result by properly maintaining and repairing the sewer after it is constructed.''

After quoting a statement to the same effect from *Joyce on Nuisances*, the opinion in the Jones case proceeds to say: ''The defendants pleaded the statute of limitations. The sewer system was created and put in operation in April, 1910, and the sewage has been continuously discharged on the lands of the plaintiffs for a period of three years thereafter. We do not agree with the contention of the defendants, however, that the action is barred by the statute of limitations. The mere fact that sewers are of permanent construction does not render the nuisance, if any, permanent also. As we have already seen, the nuisance in the present case arose from faulty operation and maintenance of the sewer. It was, therefore, of a continuing or recurring nature, and the action of plaintiffs (which was one to abate a nuisance) was not barred. The action of the defendants in negligently maintaining the sewer approximately and efficiently contributed to the nuisance. Thus the fundamental basis of all equity jurisdiction in tort manifests itself and the right of the plaintiffs to equitable relief is clear and indisputable. (Citing authorities.) As we have already seen, this court has uniformly held that neither municipal corporations nor local improvement districts nor their officers may be sued at law for tort; but it does not follow that in a proper case they may not be enjoined from creating a nuisance or be required to abate one already created by them. Indeed, this affords ground for equitable relief in actions like this.''

After reversing the decree of the court below, which had dismissed the suit to abate the nuisance as being without equity, the cause was remanded with leave to the complaining property owners to make the city in which the improvement district had been organized a

party, if they were so advised, and the direction was given the chancellor to enjoin the city authorities or sewer commission, whichever had control of the operation and maintenance of the sewer system, from operating and maintaining it so as to create or continue a nuisance on the lands of the plaintiffs.

We have quoted extensively from this Jones case, for the reason that it announces principles which must be applied and which will control here, a summary thereof being that all damages incident to the construction of a sewer system and the digging of outlet ditches as a part thereof were recoverable by the persons damaged; but as the action was based upon the exercise of the right of eminent domain, such suits must be brought within three years after that right had been exercised. This limitation upon the time within which suits for damages must be brought does not apply to a suit to abate a nuisance if the sewer plant has become one.

When the betterments are assessed to pay for the construction of a municipal sewer system, it is not contemplated that it will be improperly maintained or negligently operated, and as was said in *Wood* v. *Drainage District, supra,* the improvement district has no property out of which a judgment recovered for improper maintenance and operation could be satisfied. In other words, damages incident to the construction of a sewer system must be sued for within three years after the exercise of the right of eminent domain. If, when and after the plant has been completed, it is so maintained or operated as to become a nuisance, relief must be obtained by suit to abate the nuisance.

In the case of *Sewer Imp. Dist. No. 1 of Wynne* v. *Fiscus,* 128 Ark. 250, 193 S. W. 521, L. R. A. 1917D, 682, it was held that a sewer district was liable for damages to land owners caused by the emission of bad odors from a sewer system, although the system was constructed in accordance with engineer's plans, it being said in the opinion that "The placing of the tank and the general manner of construction of this system was in keeping with the

plans, and so far as this record disclosed, is a permanent structure," in other words, the damages occasioned by the exercise of the right of eminent domain. See, also, *Sewerage Dist. No. 1 of Siloam Springs* v. *Black,* 141 Ark. 550, 217 S. W. 813; *International Shoe Co.* v. *Gibbs,* 183 Ark. 512, 36, S. W. 2d 961; *City of El Dorado* v. *Scruggs,* 113 Ark. 239, 168 S. W. 846; *Meriwether Sand & Gravel Co.* v. *State,* 181 Ark. 213, 26 S. W. 2d 57.

The judgment of the court below will, therefore, be reversed, and the cause will be remanded, with leave to transfer to equity if appellees are so advised, and for further proceedings not inconsistent with this opinion.

MEHAFFY, J., concurs.