ARKANSAS STATE HIGHWAY COMM'N *v.*
Alma Summers WALLACE

5-4964                                              444 S. W. 2d 685

Opinion delivered September 22, 1969

*Thomas B. Keys* and *Hubert Graves,* for appellant.

*Gordon, Gordon & Eddy,* for appellee & cross-appellee.

LYLE BROWN, Justice. Appellant Arkansas State Highway Commission instituted this action in eminent domain to acquire from Alma S. Wallace, appellee, 2.55 acres needed for the relocation of State Highway No. 9. The jury fixed the landowner's damages at $18,000. On direct appeal the Commission argues error in the admission of certain value testimony and in an admonition to the jury which is attacked as being a comment on the evidence. The landowner cross-appeals, alleging error in the giving and refusing of certain instructions and in allowing the Commission to proceed on the assumption that the taking did not impair ingress and egress.

Mrs. Wallace's 143-acre tract, part of which is located in the city limits of Morrilton, was used before the taking as her home and for a dairy operation conducted by her husband. The land had a narrow frontage (some 300 feet) along Highway 9 before the relocation and then ran eastward a distance of slightly more than three-quarters of a mile. The relocation moved the highway eastwardly which resulted in a severance of the westerly ten acres from the remainder of the tract.

The first point for reversal on direct appeal concerns the value testimony of Mrs. Wallace. In her estimate of values she considered the immediate use as a home and dairy operation; then she envisioned, in the foreseeable future, the utilization of the land for urban development, the latter being considered the highest and best use. On direct examination Mrs. Wallace described generally the land and improvements, the dairy operation, future adaptability to homesites, and estimated the value before the taking to be $120,000. She then testified that the severance had substantially impaired the land for development into lots and explained the reasons for that conclusion. She also asserted that a dairy operation was no longer feasible. She was then asked the value of the property after the taking and she replied, "I guess $85,000." Her computations were not based on allocation of values, rather they were her conclusions of overall estimates.

Her testimony which formed the basis of the reversal point under discussion occurred on cross-examination. After having testified that the taking had closed down the dairy business, there was this question and answer:

Q. Are you counting the *fact as an element of damages* that he is no longer in the dairy business?

A. That's right. He is no longer in the dairy business, and the equipment is just there.

Thereupon the condemnor moved that Mrs. Wallace's testimony on just compensation be stricken because her figures included an improper element, being loss of the dairy business. The request was denied. That element of damage is not proper in ascertaining, in these cases, damages to lands and improvements. *City of El Dorado* v. *Scruggs,* 113 Ark. 239, 168 S. W. 846 (1914).

It is highly significant that Mrs. Wallace did not allocate a specific figure to business loss. It was therefore impossible for the jury to know the amount of damages included for that item. They might have speculated the figure to be $8,600 because her estimate was that much higher than her expert witness, Pearce; but of course we do not propose to encourage speculation. Specifically, we hold that when a witness testifies to a total just compensation figure and it is shown that an impermissible element of valuation has been incorporated in that figure, the value testimony so affected cannot stand unless the improper amount can be distinguished. Of course the witness should be afforded an opportunity to specify the amount improperly included when that fact is revealed.

In its second point for reversal the Commission contends that appellee's appraisers erroneously considered the taking would make it possible for the highway department to restrict the landowner's ingress and egress to and from the highway. We find the contention to be

without merit. The subject matter will later be discussed in our treatment of the landowner's cross-appeal. The Commission's third point concerns an admonition given the jury with reference to Mrs. Wallace's value testimony. In view of our holding on the first point that problem is not likely to arise on retrial.

The first three points on cross-appeal are concerned with the effect of a taking in fee simple upon the landowner's right of ingress and egress on and across the relocated highway which divides her property. The Commission contends that it condemned the lands "pursuant to a statute under which it does not have the power to regulate and control the access of abutting landowners." Mrs. Wallace argues that the taking, being in fee simple, subjects her right to cross the highway at all points along the new frontage strip to the control of the Commission. She does not insist that she would be completely blocked, as in the case of a controlled access facility, but she strongly argues that the taking in fee simple gives to the Commission the power to control access in such manner as would serve the best interests of the paramount use of the lands taken.

The complaint was filed "pursuant to the authority and provisions of Act No. 419 of the 1953 General Assembly of the State of Arkansas, Ark. Stat. Ann. § 76-532 et seq." That law provides that the Commission may acquire lands for stated purposes by condemnation and that title may be acquired *in fee simple or any lesser estate*. In its complaint the Commission stated that it was necessary to condemn the subject lands in fee, excepting from the taking only drainage rights to oil and gas. That was also the content of the prayer of the complaint. The judgment recites that "fee simple title to said lands described be and it is hereby vested and confirmed in the Arkansas State Highway Commission."

For a number of reasons, some of which we shall shortly discuss, we hold that the fee simple taking of

the subject property vested in the Commission a most substantial control over the right of this property owner to go to and from her lands on each side of the new highway.

In the first place, the Commission did not take an easement; to the contrary, it took the highest estate possible. In 28 Am. Jur. 2d, Estates, § 10, we are told that fee simple "defines the largest estate in land known to the law and necessarily implies absolute dominion over the land."

Ark. Stat. Ann. § 76-544 (Repl. 1957) tells us that the acquisition of the property is to be "held inviolate for state highway purposes." Some exceptions are provided in that section which would allow, with the Commission's consent, the use of the right of way by political subdivisions, rural electric cooperatives, rural telephone cooperatives, and public utilities. No exception is listed whereby private landowners are given any type of described access for ingress and egress.

Section 76-532 specifically provides that highway purposes shall include not only the use of the property taken for public travel, but for such projects as roadside parks, the culture and support of trees and shrubbery, drainage, maintaining an unobstructed view for the traveling public, the elimination of public or private crossings, and the protection of the highway system from physical and functional encroachments of any kind. We have recited only a few of the eleven projects authorized in the statute. We perceive that Mrs. Wallace's unfettered access would be subordinate to any of the authorized uses.

Under § 76-548 the Commission would be authorized to later sell the property taken from Mrs. Wallace if it became no longer necessary or desirable for highway purposes. It is true that Mrs. Wallace or her successors in title would have the option to acquire the

property by paying a price fixed by appraisers. That power of sale is cited to point up the difference between fee simple acquisition under Act 419 and the conventional acquisition of easements under prior law. Under the easement statute the lands, when declared surplus, reverted to the adjoining landowner.

We hold that a fee simple taking under Act 419 places the predominant control of all lands within the right-of-way in the Commission; that the utilization of the acquired property for highway purposes and for such purposes as are delegated to political subdivisions and utilities will as a matter of law take precedence over all other uses; and that Mrs. Wallace's use of the highway for going in and out of her property can reasonably be expected to be affected.

The landowner's first point for reversal on cross-appeal is the refusal of the court to give this requested instruction:

DEFENDANT'S INSTRUCTION NO. 1. The Arkansas State Highway Commission in this case alleges in its complaint that it is proceeding under Arkansas Statutes, Section 76-532, which provides that the State Highway Commission is hereby authorized to acquire real property, or any interest therein, deemed to be necessary or desirable for State Highway purposes, by condemnation. Such lands or real property may be acquired in fee simple or any lesser estate.

The Arkansas State Highway Commission alleges in its complaint filed in this case that the lands owned by Mrs. Alma Summers Wallace are needed for State Highway purposes, 'and it is necessary that said lands be condemned by order of this court and title in fee simple (save and except drainage rights to the oil and gas therein and thereunder as do not interfere with surface use for highway purposes)

thereto be adjudged and vested in the Arkansas State Highway Commission.'

The instruction should have been given. It sets out in an unbiased manner (1) the authority of the Commission to take land for highway purposes, and (2) correctly states that in this case the Commission is taking a fee simple title excepting the drainage' rights to oil and gas.

The landowner's second point is that the court erred in giving the following instruction:

INSTRUCTION NO. 13. You are instructed that the highway in question here today is not what is known as a controlled access facility. The abutting landowners along this highway will have a right of reasonable egress and ingress to their lands from the highway.

That contention is meritorious. From what has been said it is apparent that the nature of Mrs. Wallace's access may well be substantially impaired; certainly the right of ingress and egress was not established as a matter of law.

On both direct appeal and cross-appeal we are asked to say whether the landowner's appraisal witnesses had a right to consider the fee simple taking a factor which would reduce the market value of her lands; that was on the premise that it would be reasonably expected to affect an unrestricted right of ingress and egress. Our answer is that the witnesses properly considered that element. They did not attempt to assess a certain monetary figure because that would have been impossible; but certainly an informed prospective buyer, in noting the fee taking, would realize that his access to the highway would surely be subordinated to the needs of the highway department and those political subdivisions or utilities utilizing the untraveled portion of the right-of-way.

Reversed on direct appeal and cross-appeal.