ARKANSAS STATE HIGHWAY COMM'N *v.*
HANSEL HIGHFILL ET UX

5-5207                          452 S. W. 2d 846

Opinion delivered April 20, 1970

*Thomas B. Keys, Phillip N. Gowen* and *Hubert Graves,* for appellant.

*J. Marvin Holman,* for appellees.

CARLETON HARRIS, Chief Justice. This is a highway condemnation case. The commission, appellant herein, brought an action against Hansel Highfill and wife for the acquisition of 48.77 acres needed for the construction of Interstate No. 40 in Johnson County. The tracts taken in fee simple were designated as 607 and 609, and construction easements were designated 607E and 609E. On trial, Mr. Highfill testified that total damages to his property amounted to $30,000.00. Hobert C. Yarbrough, a witness on behalf of appellees, testified that damages were $25,925.00. Two appraisers on behalf of the commission testified respectively to damages of $10,000.00 and $9,000.00. The jury returned verdict for the Highfills in the amount of $22,000.00

and from the judgment so entered, appellant brings this appeal. For reversal, it is first asserted that the court erred in overruling the commission's motion to strike the value testimony of Hansel Highfill on the grounds that his figures represented the value of the property to him, rather than the fair market value thereof. It is also contended that the trial court erred in refusing to strike the value testimony of the landowner as to one-half of the difference in the before and after value of the property for the reason that this portion of the landowner's testimony was predicated on the destruction of or the loss of a dairy business.

We choose to first discuss the second point. Appellant quotes from the testimony on cross-examination asserting that it makes clear that appellees were basing half of the damage testified about on the fact that they had been deprived of operating a dairy business; that this is not an element of damage that can be considered in estimating the damage to the land. The testimony is as follows:

"Q. Let me ask you this: Is a portion of the damages—And by damages you understand I mean the difference in value—I'm not talking about physical damage to the property. I'm talking about the difference in $60,000.00 and $30,000.00. Is a portion of this because you are not in the dairy business, or because you cannot operate this as a dairy farm?

A. Well, you just can't operate the thing as it is, with the highway like it is. It has cut that plum out.

Q. What I'm asking is, is a portion of this $30,000.00 that you say you are entitled to, because you can't operate that as a dairy farm any more?

A. Well, a portion of it would be.

Q. And how much would that be?

A. I don't know hardly how you would arrive at that.

Q. You don't know what portion of that $30,-000.00 would be because you can't operate it as a dairy farm any more?

A. I'd say the biggest portion of it would be because I can't operate it as a dairy farm.

Q. It would be at least half of that, wouldn't it?

A. I suppose so."

Appellant's attorney moved to strike half the damage testified to by the landowner on the grounds that appellee attributed this percentage of damages to a non-compensable element, which motion was overruled.

We think the court committed error in denying the motion. In a very recent case, *Arkansas Highway Commission* v. *Wallace,* September 22, 1969, 444 S. W. 2d 685, we stated:

"Her testimony which formed the basis of the reversal point under discussion occurred on cross-examination. After having testified that the taking had closed down the dairy business, there was this question and answer:

"Q. Are you counting the *fact as an element of damages* that he is no longer in the dairy business?

"A. That's right. He is no longer in the dairy business, and the equipment is just there.

"Thereupon the condemnor moved that Mrs. Wallace's testimony on just compensation be stricken because her figures included an improper element being loss of the dairy business. The request was denied. That element of damage is not proper in ascertaining, in these cases, damages to lands and improvements."

In *City of El Dorado* v. *Scruggs*, 113 Ark. 239, 168 S. W. 846, this court said:

"The evidence of the plaintiff also shows that he operated a dairy on his farm at the time the stream was taken as an outlet for the sewer. His dairy business was not a part of the realty, and if the sewer district had instituted condemnation proceedings against the plaintiff it could not have condemned either the cows used by the plaintiff or his dairy business.

"The evidence of the plaintiff also tended to show that he was unable to sell his milk because his customers believed that it was impure by reason of his cows drinking from the polluted stream. He was allowed to recover damages on this account. This was error. The injury to his dairy business was not an element to be considered in estimating the damage to his land. *If his land was more profitable to be used in running a dairy than for any other use, its adaptability for that use might be considered by the jury in estimating the damages to his land by reason of the pollution of the stream, but the court could not allow as an element of damages to his land the loss he suffered in the business of operating a dairy.* [Emphasis supplied.] The jury could only consider the injury that resulted to his land, and, as above stated, in determining that fact, the plaintiff should be allowed to show any use to which his property was best adapted, and its depreciation in value by reason of the fact that the stream which ran through his land had been used as a permanent outlet for the sewer."

The italicized language sets out the proper showing that can be made. For instance, Mr. Highfill could

have testified that, prior to the taking, the highest and best use of his property was for a dairy farm, and that the fair market value was $60,000.00. He could have further testified that, after the taking, the highest and best use of his land was for a small cattle operation, the value of which was $30,000.00—but this was not the type of testimony offered. To the contrary, Highfill's testimony clearly indicates that he was basing his damage on the loss of the *dairy business*. In addition to the testimony already quoted, the record reveals:

"Q. Well, then tell me how you arrived at your figure of $225.00 an acre for that land?

A. Because I figured it was worth that to me, the way I was set up with me milking the cows and dairy farming and milk at a good price, I figured that land was worth that much to me."

Again:

"Q. Describe the property to the jury.

A. Well, I run a dairy on it. There's 267 acres of it in all; and I milk a bunch of cows, the most part of it for hay, and run the rest of it in pasture, and I have farmed some of it."

Further:

"Q. Then, your improvements have been damaged, haven't they?

A. Well, of course. You can't operate any more like I did before the highway came through there. The barn is not worth anything to me any more, since that went through. The dairy barn is setting out there. It's not worth anything—it ain't

worth a dime. The way it's built, I can't even use it for a storage room or nothing, because it's built on a ramp style, and you couldn't use it for nothing any more than just a milk barn. * * *

Q. What other improvements did you have out there, other than your house?

A. My milk and my hay barns and wells, and—

Q. All right, sir. How much of that $15,000.00 represents your milk barn? So far, you've said the house is $10,000.00. How much of the other $5,000.00 is represented by the milk barn?

A. The milk barn?

Q. Yes, sir.

A. Well, that milk barn cost me about $1,-200.00 and some odd dollars to build. But the value of it would be—in the way of milking, I don't know how you figure that.

Q. I'm asking you what part of that other $5,000.00 represents the value of the milk barn?

A. $2,000.00.

Q. And what did the other $3,000.00 represent?

A. It would represent the other barn and other outbuildings.

Q. You had another barn. I believe you referred to that as the hay barn?

A. The barn there at home was used for shelter barn and a hay barn.

Q. Yes, sir. I see.

A. Together. And then· the milk barn is separate from that.

Q. How much would the other barn be worth? What portion of the other $3,000.00 represents the other barn?

A. I'd say $2,000.00.

Q. What's the other $1,000.00?

A. Well, it's when I built it I built it for a —Back several years ago when I was selling cream we sold sour cream, and I built this building for a milk house for separators and coolers and so on and so forth back several years ago before I built the milk barn."

Still further:

"Q. Why is the value of your home reduced?

A. Because I can't operate my dairy any more, and I've got to come to town to work to make a living from now on. The value of my home is out there eighteen miles out of town.[1]"

We think the court erred in denying the motion.

As to point one, we also agree that the figures given by Mr. Highfill represented the value of the property to him rather than the fair market value thereof. Here, again, the record is replete with testi-

---

[1]The testimony of the witness is somewhat confusing, since he subsequently stated that he had worked in town for 16 years; he also said that he had gotten rid of his cows, and had not sold any milk for two years "because they [Highway Department] kept saying they was coming through, and I had to get rid of them."

mony reflecting that appellee's values were reached on this premise. Mr. Highfill gave the before value of his property as $175.00 per acre, using this as an average. He said that some (the cleared land) would be worth $225.00 per acre, and that the woodland south of the homesite was worth (before the taking) $100.00 an acre. He did not know of any open pasture land immediately before March 1, 1968, which had been sold for $225.00 an acre, but replied that there was "none sold. I can't tell you of any that sold for that because there's none sold. It is fronted by five gas wells around there, and there's none for sale there. You can't buy any." Nor could the witness name pasture land anywhere that sold for $225.00 an acre. When asked how he arrived at his figure, he replied with the answer heretofore quoted, "because I figured it was worth that to me, the way I was set up with my milking the cows and dairy farming and milk at a good price, I figured that land was worth that much to me." It is true that Mr. Highfill made the statement that he was "judging by other property around, people has asked about selling and so on, and so forth, is the way I done it. I figured mine would be worth, judging by theirs—." Despite that statement, he was unable to give any figure of sales of $175.00 per acre as of March, 1968, nor could he tell of any sales of woodland for $100.00 per acre.

The two appraisers for the state, H. K. McMurrough and Robert Shockley, were unable to find sales of comparable properties in the area, i. e., farms with as much acreage as the Highfill farm. McMurrough mentioned an 80-acre sale, and Shockley mentioned a 100-acre sale; both men estimated the before value of appellees' farm as $30,000.00; McMurrough testified to damages of $10,000.00, and Shockley estimated damages at $9,000.00.

Though there were but very few sales in the area, and none that seem exactly comparable, the fact remains that it clearly appears that Highfill's estimate on before and after values was based on the value of

the property to him, rather than the market value of same, and the court should have stricken this testimony, since these values had an erroneous base.

Reversed and remanded.

FOGLEMAN, BYRD and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I would affirm this judgment. I do not think there was any error in the matters treated in the majority opinion. If there was, it was not prejudicial.

The testimony of appellant was not that his damage included loss of his business or the profits therefrom. He was saying, as clearly as a non-expert landowner could say, that the property was no longer available for its highest and best use—a dairy farm. In assessing his damages, he considered his inability to utilize his property for that use for which he thought it most valuable, rather than the loss of his business, his cows or his equipment.

It was shown that the land, formerly used as a dairy farm, had been cut into five separate tracts so that it could not be used either for dairy farming or for cattle raising. The owner also testified that his dairy barn and other barns were severely damaged by reason of these factors. He explained that while he considered improvements on the property to have been of a value of $15,000 before the taking, they were worth only $7,500 after the taking. Highfill concluded by telling the court that there was no way to separate that part of the damages attributable to "not being able to operate as a cattle farm or as a dairy farm."

I agree that *City of El Dorado v. Scruggs*, 113 Ark. 239, 168 S. W. 846, governs. As I see it, the portion of the opinion in that case which was italicized makes Highfill's testimony admissible. He has not, and does not, claim any damages for the loss of his

business or injury thereto. He only claims the depreciation in value of his land and improvements because a dairy business could not be operated on the land.

This case is readily distinguished from *Arkansas State Highway Commission* v. *Wallace,* (September 22, 1969) 444 S. W. 2d 685. The land belonged to Mrs. Wallace. Her husband operated a dairy business. She testified that she was including as *an element of damages* the fact that her husband was no longer in the dairy business and his equipment was "just there." Obviously, the inclusion of this element was error. We reversed because Mrs. Wallace's failure to allocate a specific figure to "business loss" made it impossible for the jury to know the amount of damages claimed for that item.

Neither do I agree that Highfill's value testimony represented only the value to him. It is true that he said that he figured that the property was worth $225 per acre to him. He gave a good reason for his inability to recite comparable sales. What does one do when there aren't any? But, in spite of this, a landowner's value testimony is not rendered inadmissible because he lacks knowledge of market values. *Arkansas State Highway Commission* v. *Fowler,* 240 Ark. 595, 401 S. W. 2d 1; *Arkansas State Highway Commission* v. *Drennan,* 241 Ark. 94, 406 S. W. 2d 327; *Arkansas State Highway Commission,* v. *Maus,* 245 Ark. 357, 432 S. W. 2d 478. It would be improper if based solely upon its worth to the landowner, in the absence of special circumstances not existing here. Highfill described the land taken as good rich land, fenced, consisting of sandy loam, with clay foundation. He valued his 267-acre farm at $45,000 or an average of $175 per acre, saying that some of it would have been worth $225 per acre, while the woodland would, in his opinion, have been worth $100 per acre. He estimated that his house, barns and other improvements were worth $15,000. He also stated:

"I guess the property would be worth as much to

anybody else as it is to me, if you want to run a dairy farm it would be worth that much to anybody in conjunction with the rest of the property. The price I gave is the value that it contributes to the operation.

"I placed $7,500.00 on the improvements after the taking. You can't operate any more like I did before the highway came through there. The barn is not worth anything to me any more, since that went through. The dairy barn is setting out there. It's not worth anything—it ain't worth a dime. The way it's built I can't even use it for a storage room, or anything, because it's built on a ramp style, and you can't use it for nothing any more than just a milk barn."

Highfill also testified that the grassland taken for highway use was the most important part of the tract, because he had been mowing from 1,500 to 2,000 bales of hay per year compared with a production of 642 bales last year. Certainly he had the required familiarity with the land. See *Arkansas State Highway Commission* v. *Duff*, (May 12, 1969), 440 S. W. 2d 563, In *Arkansas State Highway Commission* v. *Drennan*, 241 Ark. 94, 406 S. W. 2d 327, we held that there was no error in refusal to strike a landowner's testimony very closely parellel to the testimony of Highfill here. We said:

"Most owners of rural lands, like this appellee, are farmers, and also like appellee they are not qualified as land appraisal experts. This does not mean that such owners who have such a close personal relationship to the lands involved have no sense of proper land values in their respective areas. Appellee testified that the actual value of his land had doubled in the last five years, and, when asked on cross examination as to his basis for such testimony, stated that he primarily based the increased valuation on the action of the Federal Land Bank of St. Louis, Missouri, in doubling all of its land

values in Western Arkansas in June of the preceding year. No testimony was offered to contradict this evidence. Furthermore, appellee testified that local lands similar to his land would be difficult to acquire at a price of $400.00 per acre. He admitted that this testimony was based largely on what owners were asking for their lands, no recent sales having come to his attention.

"We have never held that the value testimony of owners of land being condemned is inadmissible because of limitations of the landowner in experience and background in land transactions. If such restrictions were imposed, few landowners would be permitted to testify as to their own values and as to their own claims for damages. We have therefore repeatedly held that a landowner may testify as to his own opinions concerning values before and after the taking of his land."

In *Arkansas State Highway Commission v. Fowler,* 240 Ark. 595, 401 S. W. 2d 1, in sustaining the denial of a motion to strike a landowner's testimony, we relied upon and quoted from 20 Am. Jur., Evidence, § 892, as follows:

" 'It is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns. The weight of such testimony is, of course, affected by his knowledge of the value.' "

I submit that appellee's testimony has at least as reasonable a basis as did the testimony of landowners

in *City of Springdale* v. *Keicher,* 243 Ark. 161, 419 S. W. 2d 800; *Housing Authority of City of Searcy* v. *Angel,* 239 Ark. 224, 388 S. W. 2d 394; and many other cases.

I would also affirm the judgment in this case upon the authority of *Arkansas State Highway Commission* v. *Ormond,* 247 Ark. 2, 448 S. W. 2d 354. Even if Highfill's testimony be considered improper, reversal is not required because there is sufficient evidence to sustain the verdict and it is manifest that the error was not prejudicial and did not affect the verdict. The testimony of Hobart C. Yarbrough, an expert appraiser, stated his opinion that the damage to the Highfill tract was $25,925. This was $3,925 more than the jury verdict. Neither this witness' qualifications nor his testimony is challenged. Any error in admitting the landowner's value testimony did not enhance the award of a verdict for less than the amount for which there is substantial evidentiary support.

HOLT, J., joins in this dissent.