Mitchell K. DUTTON, Wilma K. Dutton, Joseph Perra, Evelyn Perra, Carl Schwab, Susan Schwab, Andrew Dolnak, and Ann Dolnak, Plaintiffs,

v.

CITY OF CREST HILL, Russell DeLong, John Djerf, and Felix Borio, Defendants.

No. 80 C 5190.

United States District Court, N. D. Illinois, E. D.

June 23, 1982.

---

* Whether plaintiff on a trial will have a similar problem with respect to damages remains to be seen.

Mitchell W. Horwitz, Jack Kramer, Andrew J. Horwitz & Associates, Chicago, Ill., for plaintiffs.

Thomas E. Cowgill, Cirricione, Block, Krocket & Cernugel, Joliet, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

The plaintiffs in this action are homeowners and residents of the City of Crest Hill in Illinois. The defendants are the City, its Superintendent of Public Works, the City Engineer and the Mayor. The action is brought under Section 1983 of the Civil Rights Act. Plaintiffs basically complain that the Elrose Court Area Lift Station which serves the area of Crest Hill in which plaintiffs reside is inadequately maintained and as a consequence whenever it rains raw sewage floods into plaintiffs' homes. In Counts I, III, V, and VII, plaintiffs assert that defendants' conduct in failing to repair

and maintain the lift station violates plaintiffs' constitutional and civil rights, including deprivation of equal protection under the law, a partial taking of their property without due process of law and without adequate compensation, interference with plaintiffs' peaceful enjoyment of their land and home, and, finally, deprivation of liberty without due process of law. Pendent state law counts are also added in Counts II, IV, VI and VIII. Plaintiffs seek a mandatory injunction and actual and punitive damages.

The defendants have moved to dismiss the claims based on allegations of deprivation of liberty and interference with the peaceful enjoyment of plaintiffs' land and homes. The court agrees that the Amended Complaint does not contain allegations which plead a deprivation of liberty. The court further agrees that the alleged "interference with the peaceful enjoyment of land and home" is not a separate constitutional claim but part of plaintiffs' claims of a partial taking without due process or adequate compensation.

■ Defendants have also moved to dismiss the claims alleging a denial of equal protection. These claims are based on plaintiffs' allegation that the lift station servicing their homes was not repaired while other lift stations were. Taking this allegation as true for purposes of this motion to dismiss, it does not rise to the level of a denial of equal protection.

Defendants cite *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944), for the proposition that a denial of equal protection requires a showing of "intentional or purposeful discrimination," which may be satisfied either by showing action against a particular class or by extrinsic evidence showing a discriminatory

design not evident from the action itself. Plaintiffs concede that this is the rule but argue that the bare allegation that other lift stations were repaired when their station was not establishes intentional discrimination. It does not, absent any facts indicating that defendants' purpose in failing to repair the Elrose Court Area Lift Station was to deprive these particular homeowners of adequate sewers.

Next, defendants have moved to dismiss plaintiffs' claim that defendants' conduct constituted a partial taking of their property without adequate compensation. This claim is apparently based on the Fifth Amendment. "It is well settled that this provision is a limitation upon the power of the United States only and is not applicable to the states." 2A Nichols, *The Law of Eminent Domain* § 7.31. However, the Supreme Court has held that the due process guaranteed under the Fourteenth Amendment includes the right to just compensation whenever a state appropriates private property for a public use. *Chicago, B & Q Railroad v. City of Chicago,* 166 U.S. 226, 235–41, 17 S.Ct. 581, 584–86, 41 L.Ed. 979 (1897). See also *O'Grady v. City of Montpelier,* 573 F.2d 747, 750 n.8 (2d Cir. 1978).

■ Plaintiffs cannot successfully contend that Illinois provides no mechanism for compensating landowners whose property is taken for public use. See Ill.Rev.Stat. ch. 47, ¶ 1. Assuming that there was a taking here, the availability of such a state law mechanism precludes finding any taking by the state without just compensation in violation of the Fourteenth Amendment. *Light v. Blackwell,* 472 F.Supp. 333 (E.D. Ark.1979), aff'd *without opinion,* 620 F.2d 307 (8th Cir. 1980); *KAO v. Red Lion Municipal Authority,* 381 F.Supp. 1163 (M.D. Pa.1974).[1]

---

1. To the extent these cases hold that the availability of post-taking compensation obviates all due process problems they are rendered suspect by *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). This court has already concluded that the Seventh Circuit has interpreted *Parratt* to hold that due process is satisfied by a post-deprivation remedy only where the deprivation of property was negli-

gently caused. *McCowen v. City of Evanston,* 534 F.Supp. 243, 249 (N.D.Ill.1982). The two earlier district court cases can be reconciled with *Parratt* if it is assumed that the concept of due process under the Fourteenth Amendment is broader than the mere provision of just compensation for a public taking. In other words, the availability of a post-deprivation hearing may satisfy the requirement of just compensa-

Plaintiff's final federal claim, that the repeated flooding of their homes is a partial taking without due process in violation of the Fourteenth Amendment, presents a more difficult question.

To adequately allege a cause of action under § 1983 plaintiffs must show action under color of state law that violates the Constitution. The parties appear to agree that defendants' conduct was action under color of state law, so the inquiry must focus on whether there has been a constitutional violation. To adequately allege a violation of the Fourteenth Amendment, plaintiffs must show action that is attributable to the state, a property right cognizable under state law, a deprivation of that right, and the absence of due process. In this case, the controversy centers on whether there has been a deprivation and, if so, whether it was without due process.

The Fourteenth Amendment does not speak of "takings" of property; it refers to "deprivations" of property. Plaintiffs' complaint assumes that the two concepts are the same. Indeed, several courts have treated the two ideas as coextensive, but without directly addressing the issue. *E.g., O'Grady v. City of Montpelier,* 573 F.2d 747 (2d Cir. 1978). Moreover the Supreme Court and the Court of Claims have on several occasions implied that interferences with property rights that do not rise to the level of takings are only common law torts and not actionable under the Fourteenth Amendment. *United States v. Lynah,* 188 U.S. 445, 472, 23 S.Ct. 349, 357, 47 L.Ed. 539 (1901); *Accardi v. United States,* 220 Ct.Cl. 347, 599 F.2d 423, 429 (1979); *Barnes v. United States,* 538 F.2d 865, 870 (Ct.Cl. 1976). At this point in the proceedings, this court need not offer an opinion on the issue.

Certainly not every interference with a property interest is of constitutional magnitude. Assuming that plaintiffs must establish a taking of their property to prevail on their due process claim, there is some question whether flooding, unless it is permanent or inevitably and regularly recurring, constitutes a taking, partial or otherwise. The taking cases draw a distinction between mere tortious invasion of property rights and a taking in the constitutional sense.

> Over the years the decisions have developed the law of eminent domain as applied to instances of flooding. Generally speaking, property may be taken by the invasion of water where subjected to intermittent, but inevitably recurring, inundation due to authorized Government action. *United States v. Cress,* 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917). We have so held in numerous cases .... The cases disclose the rule that the permanent, intermittent flooding which amounts to a taking must be frequent, and productive of substantial damage. Government-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort. In such cases recovery is not authorized in [the Court of Claims].[2]

*Barnes v. United States,* 538 F.2d 865, 870 (Ct.Cl.1976). *Accord, Accardi v. United States,* 220 Ct.Cl. 347, 599 F.2d 423, 429 (1979); *Harris v. United States,* 467 F.2d 801, 803 (8th Cir. 1972). As the court stated in *National By-Products, Inc. v. United States,* 186 Ct.Cl. 546, 405 F.2d 1256, 1273 (1969), "one, two or three floodings by themselves do not constitute a taking."

In *Ortega Cabrera v. Municipality of Bayamon,* 562 F.2d 91 (1st Cir. 1977), the Court considered whether a lessening of property value due to noisome odors and water pollution from a nearby city dump constituted a taking under the Constitution. In reviewing the law of takings, the Court stated:

> We note that a long line of Supreme Court cases appears to establish that the facts of substantial economic loss and significant diminution in value alone do not

tion, but it does not necessarily satisfy the requirement of due process. See also pp. 42–43, *infra.*

2. By statute, the Court of Claims may only hear cases against the Government arising under the Constitution or federal laws, but not those based on common law torts. 28 U.S.C. § 1491.

establish compensable takings .... Although there is language in several Supreme Court decisions to the effect that the extent of the diminution of value is relevant, the fact of economic loss alone does not add up to a taking ....

The recent cases in which takings have been found suggest that it may be that takings exist only when the diminution in values amounts to the total destruction of the value of an identifiable thing which is, or would have been, perceived by a reasonable owner as the subject of a distinct investment ....

Whatever else can be said about the law of takings, government action which interferes with the value of land only by making it less desirable for its present uses does not effect a taking .... Since plaintiffs' four tracts of land indisputably remain suitable for the uses to which they had been put prior to the establishment of the dump, the bad smells and health hazard created by the dump have not impaired the use of the land sufficiently to effect a taking.

*Id.* at 100–01. The Court then indicated that those plaintiffs whose land bordered the creek polluted by leachate from the dump might have a claim for a partial taking because the evidence suggested that not only was the creek now unsuitable for its prior uses, but that it posed such a health hazard that it had to be fenced off to prevent any use. The Court compared this to the flooding cases such as *Barnes, supra. Id.* at 101.

■ Taking these principles and applying them to the instant complaint raises a substantial question whether plaintiffs have alleged a taking. The complaint only alleges "repeated" flooding, although plaintiffs argue that every time it rains, their property is flooded. To constitute a taking, plaintiffs will have to make good on their argument; they will have to show that every time it rains, their property is inevitably flooded. Moreover, to establish a taking, they will have to show substantial damage to their property or an interference with their use of their property of such magni-

tude that it amounts to an easement. *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). If plaintiffs can only show that their basements are flooded with a couple of inches of sewage water for a few hours, it is likely that no taking will be found. Finally, there is language in the decisions which suggests that the flooding must not be preventable; otherwise it is only a trespass and not a taking. *Sanguinetti v. United States,* 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924).

The court sincerely doubts whether plaintiffs will be able to establish a taking of their property in this case. However, because the issue is before the court on a motion to dismiss, the record does not offer sufficient facts from which to draw any firm conclusions. *Cf. O'Grady v. City of Montpelier,* 573 F.2d 747, 751 (2d Cir. 1978).

In *O'Grady,* the plaintiffs alleged a deprivation of property without due process because a change in the grade of the street in front of their garages caused water to drain into the garages rendering them unusable. The Second Circuit reversed the dismissal of their complaint, stating:

Whether damage to appellants' garages allegedly caused by the water drainage was sufficient to constitute a taking is, however, unclear on the basis of the briefs and affidavits submitted below.... They do not reveal where the water comes from, whether the drainage is without cessation, whether the two units are continuously unusable, the extent of the structural damage, if any, or the amount of rental income lost. Appellants may have a right to compensation under Vermont law, but this does not necessarily mean that they have been deprived of their property in the sense contemplated by the Fifth and Fourteenth Amendments. Obviously, not every interference with a property right gives rise to a constitutional cause of action, as the land use regulation cases amply demonstrate.

*Id.* As in *O'Grady,* the court here must conclude that the record is too scanty to determine that no taking has occurred.

As the court has determined that plaintiffs' claim that a taking occurred survives the motion to dismiss, the court need not determine whether something less than a taking states a claim under the Fourteenth Amendment in the circumstances of the present case.

Defendants also argue that the availability of state law remedies obviates any due process problems here, relying on *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975); cited with approval by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981). Language in Supreme Court cases indicating that "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process," *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974); both quoting *Phillips v. Commissioner*, 283 U.S. 589, 596–97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931), lends support to defendants' position. The Seventh Circuit, however, has apparently limited the application of this analysis to cases involving negligence only, see the discussion in *McCowen v. City of Evanston*, 534 F.Supp. 243, 249 (N.D.Ill. 1982).

Here, plaintiffs have alleged that their lift station repeatedly malfunctioned and that defendants intentionally failed to repair it. Again, at this stage in the proceedings, plaintiffs' allegations survive a motion to dismiss. After further development of the facts, if it becomes evident that defendants' conduct falls below the level of intentional or reckless nonfeasance, the availability of state law remedies will become relevant to the court's evaluation of what process is due in this case.[3]

█ As to the state law claims, the court declines to exercise pendent jurisdiction over them. They raise questions of negligence under Illinois tort law that are not otherwise present in the case and may prolong discovery of and confuse the issues in the federal counts. Accordingly, Counts II, IV, VI and VIII are dismissed.

█ Finally, defendants have moved to dismiss the complaint as to the City of Crest Hill, arguing that the claims against it are based solely on a theory of respondeat superior, which is insufficient to impose liability under § 1983. To hold the city liable, plaintiffs must allege a municipal policy or custom that caused the individual defendants' challenged conduct. *Powe v. City of Chicago*, 664 F.2d 639, 649–50 (7th Cir. 1981). The Seventh Circuit has adopted the rule that "where the plaintiff alleges a pattern or series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion." *Id.* at 650. Here, plaintiffs have alleged a series of floodings; this is sufficient on a motion to dismiss to raise an inference of municipal policy or custom. Once again, discovery may reveal the absence of any municipal policy or custom in this case.

### CONCLUSION

Defendants' motion to dismiss is granted as to the claims of deprivation of liberty, denial of equal protection, interference with peaceful enjoyment of land, and partial taking without just compensation in Counts I, III, V and VII, and as to Counts II, IV, VI and VIII. Defendants' motion is denied as to the claims of partial taking without due process and as to the City.

---

**3.** Plaintiffs' argument that the state law remedies are inadequate because they do not allow punitive damages is without merit, see *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).