733 F.2d 1311
 20 ERC 2270, 14 Envtl. L. Rep. 20,584
 Barron COLLIER, d/b/a Ozark Trout Farm, Appellee,
v.
CITY OF SPRINGDALE, Walter Turbo, Larry Clinkscales, Harold
Henson, The Board of Directors of the City of
Springdale, Springdale Water & Waste,
a/k/a Springdale Water &
Sewage Commission, Appellants.
 No. 83-1567.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 12, 1983.
Decided May 8, 1984.
Rehearing Denied June 5, 1984.
 
 Thurston A. Thompson, Springdale, Ark., for appellant.
 Richard Hipp, Fayetteville, Ark., for appellee.
 Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 The City of Springdale and the Springdale Water and Sewage Commission appeal from a final judgment entered in the District Court for the Western District of Arkansas after a jury trial awarding Barron Collier $36,740.00 for damages he sustained as the result of two sewage discharges. For reversal appellants argue that although Collier's property has been appropriated for public use, Arkansas law protects his constitutional right to just compensation and thus Collier has failed to demonstrate a constitutional violation cognizable under 42 U.S.C. Sec. 1983. We agree. For the reasons discussed below, we reverse and remand with directions that the district court dismiss this action.
 
 I. FACTS
 
 2
 Springdale Water and Sewer Commission (Commission) is a public agency created by the City of Springdale, Arkansas (City). Pursuant to its authority, the Commission operates and maintains a system of sewage collection pipes, hydraulic lift stations and a sewage treatment facility. The Bradshaw lift station is a small lift station located in the southwest part of the City. In compliance with the then applicable state and federal regulations, the Bradshaw lift station was designed in 1963 by a qualified civil engineer. The appropriate state and federal agencies approved the plans and specifications for the Bradshaw lift station.
 
 
 3
 To permit access for repair in the event of a mechanical failure at the Bradshaw lift station, the original design included the installation of an overflow pipe. The overflow pipe was designed to carry sewage away from the lift station and discharge it into a segment of dry creek bed owned by the City. It is undisputed that this system was consistent with or above the state of the art at the time of its construction.
 
 
 4
 Throughout Arkansas there exist natural subsurface water systems. These natural "pipelines" are actually passages eroded from the underground limestone rock. Water from the land surface moves underground, travels rapidly through these underground systems and finally flows into springs located throughout Arkansas.
 
 
 5
 Barron Collier operates a trout farm situated on a downstream segment of the dry creek bed into which sewage is discharged from the Bradshaw lift station. His fish are raised in springs watered by an underground water system. On July 28, 1977, and July 13, 1980, the Bradshaw lift station experienced unforeseen mechanical failures necessitating sewage discharges through the overflow pipe. The sewage entered the ground and subsurface waters polluting Collier's springs and causing sudden massive fish kills at his trout farm.
 
 
 6
 Collier commenced this action claiming that his property had been taken without just compensation and due process in violation of the fourteenth amendment of the United States Constitution. Collier sought monetary damages from the City, the Commission and certain officials[1] for the pollution of his springs resulting from the discharge of sewage by appellants. In addition, Collier sought injunctive relief against the future occurrence of such action. Redress was pursued under 42 U.S.C. Sec. 1983 and its jurisdictional counterpart 28 U.S.C. Sec. 1343. The district court denied several motions submitted by the City and the Commission including a motion to dismiss for failure to state a claim under 42 U.S.C. Sec. 1983. Collier ultimately prevailed at trial and was awarded $36,740.00 in damages; the district court granted an injunction enjoining the City and the Commission from permitting further sewage discharges at the Bradshaw lift station.
 
 II. DISCUSSION
 
 7
 Section 1983[2] grants a civil remedy to persons deprived of constitutional rights by persons acting under the color of state law. In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (Parratt ), a state prison inmate was deprived of a $23.50 hobby kit that he had ordered because a prison official negligently mishandled the prison mail. Id. at 529-30, 101 S.Ct. at 1909-10. Stating that the fourteenth amendment protects only against deprivations without due process of law, the Court held that where deprivations of property are random and unauthorized and it is therefore impossible for the state to provide a meaningful predeprivation hearing, due process is satisfied by the existence of an adequate postdeprivation state remedy. Id. at 541, 101 S.Ct. at 1916.
 
 
 8
 Writing for the majority, Justice Rehnquist stated that
 
 
 9
 in any Sec. 1983 action the initial inquiry must focus on whether the two essential elements to a Sec. 1983 action are present: (1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.
 
 
 10
 Id. at 535, 101 S.Ct. at 1913. As in Parratt, it is clear that the alleged conduct of the City and the Commission satisfies the "under the color of state law" requirement and therefore we must only decide whether Collier has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States.
 
 
 11
 Collier alleges that his substantive right to just compensation under the fifth and fourteenth amendments[3] was violated when appellants "took" his fish and diminished the value of his property without any prior notice, hearing or compensation.[4] The City and the Commission concede that the sewage discharges on July 28, 1977, and July 13, 1980, caused the fish kills at Collier's trout farm, but argue that Collier's injuries are the result of lawful takings pursuant to the sovereign's power of eminent domain. Therefore, appellants argue, Collier is only entitled to just compensation for the loss of his fish under applicable state provisions and thus has failed to demonstrate a cognizable constitutional violation.
 
 
 12
 It is clear that the mere exercise of the sovereign's power of eminent domain is not offensive to due process. See Chicago, Burlington & Quincy R.R. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). The parties acknowledge that appellants had the authority under the United States Constitution and Arkansas Constitution to condemn private land for public use. Collier notes that the sewage discharges were in accordance with established state procedure and not random and unauthorized conduct by City officials. Thus Collier argues that Parratt requires that he be afforded notice and a hearing before his property is taken. See Parratt, 451 U.S. at 537, 101 S.Ct. at 1913. Long ago the Supreme Court made it clear that the fifth amendment of the United States Constitution "does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain and adequate provision for obtaining compensation before his occupancy is disturbed." Cherokee Nation v. Southern Kansas Ry., 135 U.S. 641, 659, 10 S.Ct. 965, 971, 34 L.Ed. 295 (1890). If the government chooses to dispense with formal condemnation proceedings prior to the seizure of private property for public use, then the constitution only requires that the property owner be able to bring an inverse condemnation action to compel just compensation. See Fountain v. Metropolitan Atlanta Rapid Transit Authority, 678 F.2d 1038, 1043 (11th Cir.1982) (Fountain ). Thus, it is well settled that a sovereign vested with the power of eminent domain may exercise that power consistent with the constitution without providing prior notice, hearing or compensation so long as there exists an adequate mechanism for obtaining compensation. See Yearsley v. Ross, 309 U.S. 18, 22, 60 S.Ct. 413, 415, 84 L.Ed. 554 (1940); Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637 (1932); Fountain, 678 F.2d at 1045 n. 13; Stringer v. United States, 471 F.2d 381, 383 (5th Cir.), cert. denied, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973); Light v. Blackwell, 472 F.Supp. 333, 337 (E.D.Ark.1979), aff'd mem., 620 F.2d 307 (8th Cir.1980) (Light ); Kao v. Red Lion Municipal Authority, 381 F.Supp. 1163, 1166 (M.D.Pa.1974) (Kao ).[5] Several courts have refused to find a cause of action under 42 U.S.C. Sec. 1983 where a plaintiff alleges a "taking" of his property by the state without due process without first attempting to avail himself of the state mechanisms for compensation following the de facto appropriation. For example, in Light the plaintiffs claimed that certain conduct by the Arkansas State Highway Commission amounted to a taking of their property without just compensation and the continuing torts of trespass, nuisance, and unreasonably depriving the plaintiffs of lateral support for their property. Equitable and monetary relief was sought pursuant to Sec. 1983. The court succinctly stated that "the plaintiffs here have not been deprived of due process since due process remedies are available to the plaintiffs in state court for the alleged taking of their property." 472 F.Supp. at 336.[6] The court refused to permit the property owners to bypass adequate Arkansas statutory and administrative provisions specifically designed to appropriately compensate such litigants within a minimum time frame. Id. at 338. Accord O'Grady v. City of Montpelier, 573 F.2d 747, 751 (2d Cir.1978); Elterich v. City of Sea Isle City, 477 F.2d 289, 291 (3d Cir.1973); Dutton v. City of Crest Hill, 547 F.Supp. 38, 40 (N.D.Ill.1982); Kohlasch v. New York State Thru Way Authority, 460 F.Supp. 956, 960-61 (S.D.N.Y.1978).[7] Finally, "to adjudicate [these] claims ... would be an unwarranted interference with state court jurisdiction." Light, 472 F.Supp. at 337 (citations omitted). Collier cannot seriously contend that the Supreme Court in Parratt meant to negate the existing precedent and create a cause of action where none previously existed. Several cases decided since Parratt have reaffirmed the continuing validity of these principles. See Edwards v. Arkansas Power & Light Co., 683 F.2d 1149, 1153 (8th Cir.1982); Fountain, 678 F.2d at 1045 n. 13; Dutton v. City of Crest Hill, 547 F.Supp. at 40.[8]
 
 
 13
 Collier does not dispute that appellants possess the power of eminent domain. The Arkansas Constitution guarantees just compensation for private property appropriated or damaged for public use by governmental entities.[9] Further, an Arkansas statute establishes the measure of recovery for real or personal property so taken or damaged and grants a cause of action for the recovery of such amounts.[10] These provisions have often been used to secure relief for damages caused by sewage discharges. See Sewer Improvement District No. 1 v. Jones, 199 Ark. 534, 134 S.W.2d 551, 555 (1939); Jones v. Sewer Improvement District No. 3, 119 Ark. 166, 177 S.W. 888, 889-90 (1915); McLaughlin v. City of Hope, 107 Ark. 442, 155 S.W. 910, 911 (1913).
 
 
 14
 It appears that these provisions fully preserve all the constitutional protections due Collier for the public taking, injury or destruction of his property, real or personal. See Kao, 381 F.Supp. at 1166. In the state court Collier might have urged all the matters raised here, yet he has chosen not to avail himself of the state mechanisms for compensation. Instead, he argues that these Arkansas procedures will prove to be inadequate to protect his right to compensation. See Fountain, 678 F.2d at 1045 n. 13. In Edwards v. Arkansas Power & Light Co., 683 F.2d 1149, this court was unwilling to find the state remedy adequate where it was unclear whether Arkansas law provided a cause of action for bad faith on the part of the utility company in appraising the plaintiff's property in addition to one for the plaintiff's claim for just compensation. Id. at 1153-55. However, Collier's challenge to the adequacy of the state remedy is not premised on the unavailability of a cause of action distinct from his claim for just compensation. Rather, Collier claims that the state just compensation mechanism is rendered inadequate by an Arkansas statute providing municipalities immunity from tort liability.[11] At this point we find it unnecessary to decide whether a statutory grant of sovereign immunity makes an available state remedy inadequate thus making it insufficient to satisfy the requirements of due process. Collier cites no Arkansas cases to support the proposition that an action based on appropriation of or damage to private property for public use is barred by the Arkansas tort immunity statute.[12] To the contrary, it is clear that the Arkansas courts distinguish between tort actions and claims for just compensation insofar as tort immunity is concerned. In Chamberlain v. Newton County, 266 Ark. 516, 587 S.W.2d 4 (1979), the Supreme Court of Arkansas held that the Chancery Court had no jurisdiction to entertain a suit in damages for trespass on the ground that the county was immune from damages in a tort action under the tort immunity statute.[13] However, the court noted that the plaintiff had a remedy in county court for just compensation for the taking of her property. Id. 587 S.W.2d at 6-7. See also Sewer Improvement District No. 1 v. Jones, 134 S.W.2d at 552-53. The Supreme Court said in Parratt, 451 U.S. at 544, 101 S.Ct. at 1917:
 
 
 15
 Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under Sec. 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.
 
 
 16
 In light of these authorities we hold that Arkansas provides adequate mechanisms for compensating property owners such as Collier whose property was taken for public use, as well as for prospective injunctive relief to enjoin future occurrence of such conduct. See Light, 472 F.Supp. at 339. We also hold that the availability of these state law mechanisms precludes finding that the taking of Collier's property was in violation of a right, privilege or immunity secured by the Constitution or laws of the United States; thus he has failed to state a claim for the taking of his property cognizable under 42 U.S.C. Sec. 1983. As noted in Light, 472 F.Supp. at 338, "[t]o assume jurisdiction in a case of this type would mean the opening of a floodgate to a multiplicity of federal actions involving all aspects of state eminent domain proceedings which in truth should be adjudicated under state procedures and in state forums."
 
 
 17
 Accordingly, the judgment of the district court is reversed and remanded with directions that this action be dismissed.
 
 
 
 [1]
 Prior to submitting the case to the jury, the trial judge instructed that he had, as a matter of law, dismissed the claims against the three individual defendants. The jury was also told that the City and the Commission were to be treated as a single entity. Transcript at 645-46
 
 
 [2]
 Originally passed in 1871, the Civil Rights Act, 42 U.S.C. Sec. 1983 (1976 & Supp. V 1981) provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or any other proper proceeding for redress.
 
 
 [3]
 The fifth amendment of the United States Constitution provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. This prohibition has been incorporated to apply to the states through the due process provision of the fourteenth amendment. See Chicago, B. & Q. R.R. v. City of Chicago, 166 U.S. 226, 235-41, 17 S.Ct. 581, 584-86 (1897)
 
 
 [4]
 Both parties and the court below relied heavily on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (Parratt ), and its progeny in support of their respective positions. We believe this reliance is misplaced. As we will demonstrate, the Supreme Court's rationale in Parratt further supports our conclusions in the present case. However, unlike Parratt, this case is more appropriately characterized as an authorized governmental "taking" allegedly in violation of Collier's constitutional right to just compensation rather than a tortious deprivation of property in violation of rights to procedural due process. Thus, more directly on point is a distinct line of cases addressing the issue of federal jurisdiction over state inverse condemnation actions such as this
 
 
 [5]
 Collier seems to suggest that he should have been given an opportunity to voice his opposition to the City's sewage practices. If the City's actions resulted in a taking for public use, these cases make it clear that Collier is only entitled to just compensation and not an opportunity to challenge the propriety of the practice either before or after the taking. Assuming the system chosen by the City was approved by the governing state and federal agencies, the City's decision to adopt that plan in lieu of another is a legislative act. The protections of procedural due process do not apply to legislative acts:
 Where a rule of conduct applies to more than a few people, it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.... There must be a limit to individual argument in such matters if government is to go on.
 Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915) (Holmes, J.). This position was recently reiterated by the Third Circuit in deciding whether individuals had the right to due process protections prior to the passage of zoning regulations:
 To provide every person affected by legislation the various rights encompassed by procedural due process--including hearings, opportunity for confrontation and response, clear standards, an impartial arbiter, and possibly judicial review--would be inconsistent with the structure of our system of government. The act of legislating necessarily entails political trading, compromise, and ad hoc decisionmaking which, in the aggregate, produce policies that at least approximate a fair and equitable distribution of social resources and obligations.
 Absent an indication that this process inherently treats a particular class of persons inequitably, it is unnecessary for the courts to intervene because the relatively large number of persons affected works to ensure that the legislature will not act unreasonably toward the populace. In short, the general theory of republican government is not due process through individual hearings and the application of standards of behavior, but through elective representation, partisan politics, and the ultimate sovereignty of the people to vote out of office those legislators who are unfaithful to the public will. Inasmuch as the Supervisors, in passing the zoning amendments, were acting in a legislative capacity, Mark-Garner has no procedural due process claim against their actions.
 Rogin v. Bensalem Township, 616 F.2d 680, 693 (3d Cir.1980) (footnotes omitted), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).
 
 
 [6]
 Addressing the plaintiffs' claim that the state had committed a willful and continuous trespass over their land, the court said, "[w]hile the due process clause of the fourteenth amendment and Civil Rights Act protect 'property' rights as well as 'personal' rights, a trespass to property, negligent or intentional, is merely a common law tort and does not infringe on the federal constitution." Light v. Blackwell, 472 F.Supp. 333, 337 (E.D.Ark.1979) (citing Kao v. Red Lion Mun. Auth., 381 F.Supp. 1163, 1166 (M.D.Pa.1974) (Kao ) (citations omitted)), aff'd mem., 620 F.2d 307 (8th Cir.1980) (Light )
 
 
 [7]
 In Stearns v. Smith, 551 F.Supp. 32, 36 (S.D.Tex.1982), the court said that the Fifth Circuit has not required plaintiffs to first resort to adequate state remedies for just compensation before bringing a Sec. 1983 action in federal court. We are not convinced that the Fifth Circuit has taken such a position. The case cited for that proposition did not deal with governmental takings of private property, but with constitutional challenges to the state's method of terminating public employment. See Battle v. Mulholland, 439 F.2d 321 (5th Cir.1971). Even if the Fifth Circuit would reach a different conclusion on the facts before us, we believe that those cases cited in support of our position are better reasoned
 
 
 [8]
 Certain Parratt progeny have held Parratt inapplicable "to instances where the substantive guarantees of the Constitution are alleged to be violated, as opposed to alleged violations of procedural due process." Wolf-Lillie v. Sonquist, 699 F.2d 864, 872 (7th Cir.1983) (Parratt inapplicable to alleged violations of the fourth amendment substantive right to be free from unlawful seizures). See also Duncan v. Poythress, 657 F.2d 691, 704-05 (5th Cir.1981) (Parratt inapplicable to alleged voting rights violation), cert. dismissed, 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982); Morehead v. Virgin Islands, 556 F.Supp. 174, 176-77 (D.V.I.1983) (Parratt does not apply to alleged violations of one's first amendment right to free speech). Relying on these cases the court in Tomkins v. Village of Tinley Park, 566 F.Supp. 70, 77 (N.D.Ill.1983) (Tomkins ), concluded that the property owner stated a claim cognizable under Sec. 1983 because she alleged a violation of the fifth amendment substantive right to just compensation. We believe that this interpretation misperceives the import of those cases protecting against substantive violations of personal rights as distinguished from property rights. Further, the court in Tomkins does not explain why it believes Parratt effectively negates the precedent previously cited in this opinion. See, e.g., Yearsley v. Ross, 309 U.S. 18, 22, 60 S.Ct. 413, 415, 84 L.Ed. 554 (1940); Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637 (1932); Fountain v. Metropolitan Atlanta Rapid Transit Auth., 678 F.2d 1038, 1045 n. 13 (11th Cir.1982); Stringer v. United States, 471 F.2d 381, 383 (5th Cir.), cert. denied, 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973); Light, 472 F.Supp. at 337; Kao, 381 F.Supp. at 1166
 
 
 [9]
 Article 2, Sec. 22 of the Arkansas Constitution provides: "Property rights--Taking without just compensation prohibited.--The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."
 
 
 [10]
 Ark.Stat.Ann. Sec. 35-101 (1962) provides:
 Remedy of owner for property taken--Measure of recovery.--Whenever any corporation authorized by law to appropriate private property for its use shall have entered upon and appropriated any property, real or personal, the owner of such property shall have the right to bring an action against such corporation in the circuit court of the county in which said property is situated for damages for such appropriation at any time before an action at law or in equity for the recovery of the property so taken, or compensation therefor, would be barred by the statute of limitations and the measure of recovery in such action shall be the same as that governing proceedings by corporations for the condemnation of property.
 
 
 [11]
 Ark.Stat.Ann. Sec. 12-2901 (1979) provides:
 State subdivisions immune from tort liability.--It is hereby declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the State shall be immune from liability for damages, and no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees.
 
 
 [12]
 To hold that just compensation will not be afforded for de facto taking is likely to be constitutionally infirm. We will presume that the state courts will interpret their laws in accordance with the mandates of the just compensation clause
 
 
 [13]
 The tort immunity statute, of course, does not bar injunctive relief to enjoin the municipality from creating a nuisance or abating one already in existence. See Sewer Improvement Dist. No. 1 v. Jones, 199 Ark. 534, 134 S.W.2d 551, 554 (1939)