**Brown HARRIS II and Billie A. Harris, Trustees for the Christopher Harris Trust, Appellants,**

v.

**MISSOURI CONSERVATION COMMIS-SION, Lenny R. Gale, Jeff Churan, Carl DiSalvo, John B. Mahaffey, Richard T. Reed, Robert Paden, Kyle Carroll, Richard Bohannon, Alden Shields and Lawrence C. Belusz, Appellees.**

No. 85–1456.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1985.

Decided May 8, 1986.

Reggie C. Giffin, Kansas City, Mo., for appellants.

Robert J. Swift, Jr., Jefferson City, Mo., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Billie A. Harris and Brown Harris II [1] filed a 42 U.S.C. § 1983 action in the district court [2] alleging the Missouri Conservation Commission (Commission) deprived them of property without due process, in violation of the fourteenth amendment, and without just compensation, in violation of the fifth amendment as made applicable to the states through the fourteenth amendment. They allege that the Commission wrongfully classified a lake on their property as state waters, thereby precluding commercial fishing operations, diminishing the value of their land, and coercing them to sell the land to the Commission for a sum below market value. The district court dismissed the action for lack of subject matter jurisdiction because the complaint failed to state a viable constitutional violation. Plaintiffs appeal.[3] We affirm.

For the purposes of this appeal we accept as true the following facts alleged in the complaint. The Christopher Harris Trust, which plaintiffs represent, was the owner of an 854-acre lake called King Lake in DeKalb County, Missouri. In July, 1983 Mr. Brown was charged by a Commission agent with commercially fishing in the lake in violation of state statutes and regulations. Missouri regulations prohibit commercial fishing in "waters of the state." "Waters of the state" is defined as any water within the state which is not "entirely confined and located completely upon lands owned or leased by a single person or by two or more persons jointly or as tenants in common and including waters ... which are subject to movement of fishes to and from waters of the state." Wildlife Code of Missouri, 3 CSR 10–11.805(44). The regulation was published for public comment before it was enacted, but notices and hearings were not given to individual landowners who were affected when the regulation went into effect.

Plaintiffs believe that the Commission's classification of King Lake as state waters was erroneous because the lake is located

1. Plaintiffs proceeded pro se in the district court and in their opening brief on appeal. An attorney was retained to write the reply brief.

2. The Honorable Howard F. Sachs, United States District Judge, Western District of Missouri.

3. Plaintiffs do not appear to have appealed the dismissal of their equal protection claim which stated that other comparable bodies of water were not designated as state waters. In any event, the claim is without merit. The third claim, that Mr. Harris was falsely arrested, was never reached by the district court.

entirely within property owned by the Trust and it is not subject to movement of fishes to and from waters of the state. In October, 1983 the Trust filed in a Missouri state court a declaratory judgment action against the Commission to determine the right of the Trust to commercially fish in King Lake. This action was dismissed without prejudice in May, 1985 for want of prosecution. (Why plaintiffs failed to pursue this action is unclear.) On May 4, 1984 Mr. Harris, as representative of the Trust, appeared before the Commission to discuss the classification dispute. He suggested that the easiest solution would be for the Commission to purchase the property for one million dollars. The Trust later accepted the Commission's offer of $750,000.00, and in June, 1984 the Trust conveyed the property to the Commission by warranty deed.

One month later plaintiffs filed suit in federal district court essentially claiming that the Commission had deprived the Trust of its property without due process by wrongfully classifying the lake as state waters and without just compensation because the Trust was coerced into selling the property for less than its market value. Plaintiffs allege that the sale was coerced because the prohibition of commercial fishing in the lake reduced the value of the Trust's property by $250,000.00 to $300,-000.00, created serious financial problems for plaintiffs, and resulted in foreclosure proceedings against the property. The Commission's purchase offer was made shortly before the redemption period expired, and thus, plaintiffs argue, the Trust was forced to sell the property to the Commission for less than its true market value (*i.e.*, the value if commercial fishing is permitted).

■ Plaintiffs do not challenge the validity of the regulations which authorize the state agency to take property by designat-

ing private lakes as state waters. Plaintiffs argue only that the state's taking authority was erroneously exercised in this case and that they did not receive just compensation for their deprivation. This is a government taking case and the issues are (1) what process is due, and (2) does the state provide that process.[4] Plaintiffs argue they were entitled to a notice and hearing before the state classified their lake as part of the state waters. They concede that in ordinary condemnation cases postdeprivation notice and hearing are sufficient to satisfy the requirements of constitutional due process, but they argue that this is not an ordinary condemnation case. We agree that this is not an ordinary condemnation case, but we see no reason why plaintiffs should be entitled to predeprivation notice and hearing when the intrusion on their interest is far less than the total taking of property that occurs in ordinary condemnation cases. We therefore hold that postdeprivation notice and hearing are sufficient to protect plaintiffs' due process rights.

Next, we must determine whether the state provides an adequate remedy for compensating property owners whose property has been taken by the state. *Collier v. City of Springdale*, 733 F.2d 1311, 1313–14 n. 4, 1314–16 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 186, 83 L.Ed.2d 120 (1984). If the state provides an adequate remedy, then the federal court will not entertain jurisdiction of the case; otherwise it "would be an unwarranted interference with state court jurisdiction." *Id.* at 1315 (citations omitted). Plaintiffs argue that Missouri does not provide an adequate remedy for their deprivation. We disagree. The Missouri Constitution provides for judicial review of administrative action and provides that private property will not be taken for public use without just compensation. Mo. Const. art. V, § 18 (formerly art.

---

**4.** Both the parties and the district court relied on the analysis of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and related cases to resolve plaintiffs' claims. However, a *Parratt* analysis is not appropriate in cases involving government takings. *Collier v.*

*City of Springdale*, 733 F.2d 1311, 1313–14 & n. 4 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 186, 83 L.Ed.2d 120 (1984). Reference should have been made to those cases concerning federal court jurisdiction over issues of state takings of private property. *Id.*

V, § 22), art. I, § 26. Several state remedies were available to plaintiffs at the time the deprivation occurred.

 Plaintiffs could have requested judicial review of the Commission's action in designating their lake as state waters. Review of administrative decisions in which there was no formal administrative hearing (*i.e.*, a noncontested case) is provided for in § 536.150 of the Missouri Administrative Procedure and Review statutes, Mo.Rev. Stat. Chapter 536. Assuming, arguendo, that plaintiffs are correct that this remedy is now barred by the statute of limitation, this does not mean jurisdiction is appropriate in the federal court. The state provided a remedy, but plaintiffs failed to pursue it. They cannot obtain jurisdiction in the federal courts simply by waiting until the statute of limitation bars the state remedies. We also note that the plaintiffs originally pursued a state declaratory judgment action and then apparently abandoned it. *See* § 536.050 (state courts have the power to render declaratory judgments respecting the validity of administrative rules and the application of those rules). Plaintiffs cannot be permitted to bypass the state courts in this manner.

Plaintiffs argue that even if judicial review under these statutes could correct the erroneous classification and compel the return of the property (which plaintiffs apparently desire), they still would not be fully compensated because they could not recover loss of income and consequential damages. Plaintiffs cite no authority for the proposition that these damages cannot be recovered under the statutes. We see no limitation on the state court's ability to provide relief for consequential damage from illegal administrative action. *See* § 536.150(1) (court may order administrative officer or body to take such further action as it may be proper to require); § 536.150(3) (section 536.150 does not limit the scope of any remedy available in the

absence of this section); § 536.050 (nothing within this statute shall "be construed as a limitation on the declaratory or other relief which the courts might grant in the absence of this section"). Even if the state remedies do not provide plaintiffs with the same amount of relief which they might receive under a § 1983 action, this does not mean that the state remedies are inadequate. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

 Plaintiffs could also bring an inverse condemnation action.[5] They argue that inverse condemnation *might* not be available to them because in a similar case, *D & R Pipeline Construction Co. v. Greene County*, 630 S.W.2d 236 (Mo.App. 1982), the state court held that inverse condemnation was an inappropriate remedy. In *Greene County* the plaintiff alleged a government taking without compensation occurred when the county refused to rezone his property. The requested rezoning would have resulted in increased property value. The court held that inverse condemnation was not the proper remedy and stated that if the zoning was improper, plaintiff should seek to change the zoning. *Id.* at 238. We do not believe that *Greene County* controls in this case. First, the court specifically limited its decision to the facts of the case before it and stated it was not deciding whether inverse condemnation might be a proper remedy in other zoning situations. *Id.* Second, this is not a typical zoning situation. Plaintiffs allege a taking of existing property, not a deprivation of some future monetary gain they might achieve.

 We do not accept plaintiffs' unsupported argument that the fact that the state later purchased the land pursuant to a contract rather than under eminent domain *might* bar an inverse condemnation action. The taking allegedly occurred when the state claimed plaintiffs' lake as state waters. The fact that plaintiffs later

---

**5.** While plaintiffs' position is not altogether clear, we assume that they are arguing that they received unjust compensation because the classification was incorrect and the land was worth more than they were forced to sell it for, or, alternatively, if the classification was correct, then the state should have compensated them for the devaluation of the property.

were forced by the threat of foreclosure to sell the property does not affect the determination of whether a taking occurred earlier.

■ In sum, Missouri law provides several postdeprivation remedies which provide constitutional due process to plaintiffs. Since there is no viable claim of a constitutional violation, the district court correctly dismissed the complaint for lack of subject matter jurisdiction.

The judgment of the district court is affirmed.