**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2886EA

_____

Charles McKenzie; Ronald           *
McKenzie; Mark McKenzie, doing     *
business as McKenzie               *
Development Company,               *
                                   *
              Appellants,          *    Appeal from the United States
                                   *    District Court for the Eastern
      v.                           *    District of Arkansas.
                                   *
City of White Hall; White Hall     *
Planning Commission, Phillip       *
Williams, Individually and in      *
his official capacity,             *
                                   *
              Appellees.           *

_____

Submitted: March 12, 1997

Filed: April 23, 1997

_____

Before FAGG and HEANEY, Circuit Judges, and NANGLE,[*] District
     Judge.

_____

FAGG, Circuit Judge.

     After several years of zoning struggles, Charles, Ronald, and
Mark McKenzie, owners and developers of a residential subdivision
in the City of White Hall, Arkansas, brought this 42 U.S.C. § 1983
action against the City, its Planning Commission, and the Planning
Commissioner (collectively the City), alleging the City violated
the McKenzies' Fifth and Fourteenth Amendment rights.  The City

_____

     [*]The Honorable John F. Nangle, United States District Judge
for the Eastern District of Missouri, sitting by designation.

moved to dismiss for lack of jurisdiction and failure to state a claim under § 1983, but the district court denied the motion. The case proceeded to trial, and near the end, the district court unexpectedly expressed concern about jurisdiction. Nevertheless, the court submitted the case to the jury. The jury found in favor of the McKenzies and awarded $195,790 in compensatory damages and $30,000 in punitive damages. Three weeks after entering judgment on the general verdict, the court vacated the judgment and dismissed the case sua sponte for lack of subject matter jurisdiction, without giving any explanation. The district court denied pending motions, including the City's motion for judgment as a matter of law, as moot. The McKenzies appeal the dismissal for lack of jurisdiction. We affirm in part, reverse in part, and remand for further proceedings.

In 1971, land owned by the McKenzies was platted into a subdivision of fourteen one-acre lots along both sides of a public roadway named Michealann Drive. At the north end of the subdivision, Michealann Drive ended in a cul-de-sac. Because the land to the north was undeveloped and the subdivision was residential, the McKenzies retained a rectangular shaped parcel measuring ten feet by fifty feet as a privacy buffer. The City annexed the subdivision in 1977. Eight years later, one of the lots in the subdivision owned by the Federal Aviation Administration was offered for sale. As former owners, the McKenzies had an option to repurchase the lot, but declined because the City expressed its desire to purchase the land for erection of a new water tower. After the City purchased the lot, however, the City did not use the property in a manner consistent with the subdivision's zoning for single family residences. Instead, the City used the lot as a dumping and storage ground for unsightly and dangerous materials.

-2-

When the McKenzies protested the misuse of the lot in 1988, the City responded by demanding access across the privacy buffer at the north end of Michealann Drive. Because there was no public need, the McKenzies refused. In 1989, the McKenzies decided to revise their plan for the subdivision and divide six of the remaining lots into nine. The City, acting through the Planning Commission, allowed the McKenzies to subdivide two lots into three, but took no action on the other four remaining lots. During the planning of sewer improvements, the City's consulting engineer advised the McKenzies that the City expected the McKenzies to surrender title to the privacy buffer. The McKenzies refused, and the City withheld approval of redivision of the four lots. In May 1992, the McKenzies met with the City's mayor, who suggested the McKenzies should surrender the privacy buffer to induce the city council to clean up the City's lot.

In October 1992, the McKenzies again asked for permission to redivide the four remaining lots into six, but the City told the McKenzies to delete the privacy buffer and resubmit their plans. By January 1993, the McKenzies had planned, built, and sold two houses, but eight other planned homes were not started because the City withheld approval of the redivision and building permits pending the McKenzies' surrender of the privacy buffer. The McKenzies continued to refuse to give up the privacy buffer, and the City continued to deny the McKenzies' zoning requests. In July 1994, the City said no building permits would be issued for the McKenzies' lots until they agreed to surrender the privacy buffer. The next month, the Planning Commission sent the McKenzies a letter stating, "[T]he commission [will] only approve your resubdivision if you dedicate the [privacy buffer]" as use for a public street at a later date. The McKenzies offered the City an option to buy the privacy buffer if residential development occurred north of the

land, but the City was not interested in paying for the land. Because the McKenzies needed approval of their zoning and building requests to avoid financial ruin, and only wanted to insure complementary development north of the subdivision, the McKenzies gave the City an easement in the privacy buffer contingent on such development. Only after obtaining the conditional easement did the City grant the McKenzies' zoning requests and building permits.

In their § 1983 lawsuit, the McKenzies raise a variety of claims based on the City's demand that the McKenzies surrender the buffer in exchange for approval of zoning and building requests and correction of the City lot's misuse. Generally, the McKenzies allege the City acted under color of state law to deprive them of their property rights, due process, and equal protection. More specifically, the McKenzies allege the City took their privacy buffer without just compensation, and the City's misuse of its lot was a nuisance that amounted to an unconstitutional taking of the McKenzies' surrounding subdivision property. Further, the McKenzies allege the City withheld building permits without a legitimate reason, and arbitrarily and capriciously withheld approval of the resubdivision. The McKenzies assert the City has not taken similar actions against other similarly situated individuals. In addition to compensation for the taken property, the McKenzies sought redress for decreased subdivision property values, lost profits, other damage to their business, punitive damages, and declaratory and injunctive relief.

On appeal, the McKenzies contend the district court had jurisdiction to consider their claims. Because the district court made no findings about any disputed jurisdictional facts and none are disputed by the parties, we review the jurisdictional issue de

novo. See Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990).

At the outset, we note the cases mentioned by the district court when questioning jurisdiction during trial, Anderson v. Douglas County, 4 F.3d 574 (8th Cir. 1993), and Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102 (8th Cir. 1992), involved the failure to state § 1983 claims, not subject matter jurisdiction. "[T]he failure to present an adequate § 1983 claim does not strip the court of jurisdiction unless the claim is clearly immaterial, frivolous, and wholly insubstantial." Daigle v. Opelousas Health Care, Inc., 774 F.2d 1344, 1347 (5th Cir. 1985) (footnote omitted). Jurisdiction is based on the complaint's allegations. See id. at 1348. If the McKenzies' complaint stated a claim on its face, it alleged a valid § 1983 action and successfully invoked the district court's jurisdiction. See id. at 1347.

In their complaint, the McKenzies state a colorable takings claim by alleging the City conditioned approval of zoning and building permits on surrender of the privacy buffer without legitimate public concerns related to the requests. See Goss v. City of Little Rock, 90 F.3d 306, 309-10 (8th Cir. 1996); W.J. Jones Ins. Trust v. City of Fort Smith, 731 F. Supp. 912, 913 (W.D. Ark. 1990). The McKenzies also state a colorable claim that the City's misuse of its lot was a nuisance amounting to a taking of subdivision property other than the privacy buffer. See National By-Products, Inc. v. City of Little Rock, 916 S.W.2d 745, 747-48 (Ark. 1996). Takings claims are cognizable under § 1983. See Lake Country Estates, Inc. v. Tahoe Reg. Planning Agency, 440 U.S. 391, 398-400 (1979). The McKenzies allegations also encompass due process and equal protection claims actionable under § 1983. See

Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1538, 1540-41 (11th Cir. 1991). The district court would have jurisdiction of the McKenzies' claims under 28 U.S.C. § 1343(a)(3). See Lynch v. Household Fin. Corp., 405 U.S. 538, 544 n.7 (1972).

The City contends the McKenzies' claims are not ripe, however. To show their claims are ready for federal review, the McKenzies must first show there is a sufficiently concrete case or controversy within the meaning of Article III of the Constitution. See Bob's Home Serv., Inc. v. Warren County, 755 F.2d 625, 627 (8th Cir. 1985). The City contends there is no presently justiciable case or controversy because no taking of the privacy buffer has occurred yet. Although the circumstances that trigger the easement have not happened, the City's established interest in the McKenzies' property implies an immediate injury: a reduction in the value of the McKenzies' land. See id. The conditional easement eliminates or reduces the expectancy that potential purchasers can develop the land, and possess and control it in perpetuity. See id.; Hall v. City of Santa Barbara, 833 F.2d 1270, 1276 (9th Cir. 1986). Even if this cloud does not amount to a "taking" within the meaning of the Fifth Amendment, an issue we need not decide, the diminution in value, although small, is a concrete injury that poses a presently justiciable question. See Bob's Home Serv., 755 F.2d at 627.

To establish the second aspect of ripeness, the McKenzies must show prudential considerations justify present exertion of federal judicial power. See id. The City asserts current exercise of federal jurisdiction is unwarranted because the City had not made a final decision to deny zoning and building permits unless the McKenzies surrendered the privacy buffer, and the McKenzies had not sought compensation for the privacy buffer through available state

procedures.  See Williamson County Reg. Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985) (temporary taking by government regulations).  The McKenzies respond that the two Williamson requirements do not apply in physical taking cases.

Although the district court cited regulatory taking cases when voicing its concern about jurisdiction, we agree with the McKenzies that this case involves a physical taking rather than a regulatory one.  Appropriation of a public easement across a landowner's property is the taking of a property interest rather than a mere restriction on the land's use.  See Nollan v. California Coastal Comm'n, 483 U.S. 825, 831 (1987).  The City's easement for a public right-of-way gives rise to future physical occupation of the McKenzies' land.  See Yee v. City of Escondido, 503 U.S. 519, 527 (1992); W.J. Jones Ins. Trust, 731 F. Supp. at 913.  When the City took the conditional easement, the McKenzies lost their right to exclude the City from possession and use of the land should contingencies beyond their control arise.  See Hall, 833 F.2d at 1277.

A physical taking is by definition a final decision for the purpose of satisfying Williamson's first requirement.  See Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1402 (9th Cir. 1989).  Besides, the Commission's letter to the McKenzies shows the City had made a final decision to deny zoning requests and building permits until the McKenzies relinquished the privacy buffer.  See Christopher Lake Dev. Co. v. St. Louis County, 35 F.3d 1269, 1274 (8th Cir. 1994). As for the second Williamson requirement, the plaintiff must seek compensation from the state before proceeding to federal court if adequate state procedures are available, even in a physical taking case.  See id.; see also Littlefield v. City of Afton, 785 F.2d 596, 609 (8th Cir. 1986).

This is so because when the state provides an adequate process for obtaining compensation, no Fifth Amendment violation occurs until compensation is denied. See Sinaloa Lake Owners Ass'n, 882 F.2d at 1402.

The McKenzies did not pursue compensation for taking of the privacy buffer through available state procedures. See Collier v. City of Springdale, 733 F.2d 1311, 1316 (8th Cir. 1984). Even though the City did not take the land through eminent domain procedures, the McKenzies have a cause of action against the City under Ark. Code Ann. § 18-15-410 to recover the value of property taken in fact. See Robinson v. City of Ashdown, 783 S.W.2d 53, 56 (Ark. 1990); see also Ark. Code Ann. § 18-61-101(a) (1987) (seven-year statute of limitations). This inverse condemnation procedure is also available for takings by nuisance. See National By-Products, Inc., 916 S.W.2d at 748. The McKenzies have not shown a state inverse condemnation action would be futile, see Azul Pacifico, Inc. v. City of Los Angeles, 948 F.2d 575, 579 (9th Cir. 1991), so the McKenzies must bring an action in the Arkansas courts before their takings claims will be ripe for prosecution in the federal arena.

The McKenzies reply that 42 U.S.C. § 1983 does not require exhaustion of state remedies. The requirements that the McKenzies obtain a final decision and attempt state compensation procedures are not exhaustion requirements, however, but necessary predicates to showing there has been a taking of property without just compensation. See Estate of Himelstein v. City of Fort Wayne, 898 F.2d 573, 577 n.5 (7th Cir. 1990). We thus conclude the McKenzies' claims that the City took the buffer through coercion and the other land by nuisance are not ripe because the McKenzies have not sought just compensation from the state. The McKenzies need not pursue

state procedures for a claim that the City took the privacy buffer without a justifying public purpose, however, because this is a Constitutional violation even if compensation is paid. <u>See</u> <u>Samaad v. City of Dallas</u>, 940 F.2d 925, 936-37 (5th Cir. 1991).

Because the City's decisions to deny zoning and building permits absent surrender of the privacy buffer were final, the McKenzies' due process and equal protection claims based on those decisions are ripe. <u>See</u> <u>Sinaloa Lake Owners Ass'n</u>, 882 F.2d at 1404; <u>Executive 100, Inc.</u>, 922 F.2d at 1540-41; <u>see also</u> <u>Christopher Lake Dev. Co.</u>, 35 F.3d at 1274-75. Although most of the claims are based on facts giving rise to the McKenzies' takings claims, the McKenzies need not seek relief in state court before bringing their federal due process and equal protection claims. <u>See</u> <u>Sinaloa Lake Owners Ass'n</u>, 882 F.2d at 1404.

In conclusion, we affirm the dismissal of the takings claims for lack of jurisdiction because the claims are premature, but reverse the dismissal of the due process and equal protection claims. Because the jury rendered a general verdict, we cannot reinstate the award with respect to the due process and equal protection claims. We thus remand for further proceedings consistent with this opinion.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


-9-